555 So.2d 698 (1989)
Denise Marie PHILLIPS
v.
Ronald Lee PHILLIPS.
No. 89-CA-0023.
Supreme Court of Mississippi.
December 13, 1989.
Thomas R. Jones, Bourdeaux & Jones, Meridian, for appellant.
Lawrence Primeaux, Goldman Dreyfus Primeaux & Doherty, Meridian, for appellee.
*699 Before ROY NOBLE LEE, C.J., and SULLIVAN and PITTMAN, JJ.
PITTMAN, Justice, for the Court:
In May of 1988, Ronald Phillips filed a petition for modification of child custody and modification of a Property Settlement Agreement, arising out of a March 8, 1988, divorce of Ronald and Denise Phillips. Chancellor George D. Warner, Jr., on September 20, 1988, modified his prior judgment. First, he removed custody of the parties' minor child, Justin Harley Phillips, from Mrs. Phillips, and awarded custody to Ronald Phillips; second, he ordered that Mrs. Phillips remove herself from the former marital residence.
Denise Phillips appeals, suggesting that the Chancellor erred in the following:
I. IT WAS ERROR FOR THE TRIAL COURT TO CHANGE CUSTODY OF THE MINOR JUSTIN PHILLIPS FROM HIS MOTHER TO HIS FATHER SOLELY ON THE BASIS OF HIS MOTHER'S BRIEF INDISCRETIONS WITH A MAN, NOW HER HUSBAND. THIS ERROR WAS COMPOUNDED BY NOT REQUIRING ANY SHOWING THAT THE BEST INTEREST OF JUSTIN REQUIRED A CHANGE OF CUSTODY.
II. WHETHER THE CHANCELLOR AS A MATTER OF FACT AND LAW ERRED IN REMOVING MRS. PHILLIPS FROM HER FORMER MARITAL HOME AT A DATE EARLIER THAN PROVIDED FOR IN HER SEPARATION AND PROPERTY SETTLEMENT AGREEMENT.

STATEMENT OF THE FACTS
Denise and Ron Phillips were married August 7, 1977, and divorced on the grounds of irreconcilable differences March 8, 1988. Mrs. Phillips was granted custody of their only child, Justin Phillips, then age seven. The parties executed a Separation and a Property Settlement Agreement September 14, 1987, which was merged into the divorce decree of March 8, 1988.
The agreement provided that Mrs. Phillips would convey all her rights, title and interest in the marital residence to Mr. Phillips; she in return would have the right to exclusive use and possession of the home until October of 1990. Mrs. Phillips' right to possession would be forfeited if someone other than herself and Justin was a "permanent resident", unless she got permission from Mr. Phillips, which could not be unreasonably withheld. Mr. Phillips continued to pay the monthly mortgage notes of $446.00, in accord with the agreement. Child support was set at $50.00 per month as long as Mr. Phillips was paying the mortgage on the home; it would be increased to $200.00 per month when he ceased to make mortgage payments. No alimony was provided for Mrs. Phillips.
Mrs. Phillips at the time of trial worked as a cashier at the Navy Exchange. She works from fifteen to twenty-two hours per week at a rate of $4.07 per hour. Her gross income is about $130.00 every two weeks; the only other source of income is the $50.00 child support she gets from Mr. Phillips. Mr. Phillips was a First Class Petty Officer in the Navy. At the time of the hearing on the modification petition, he was stationed in Virginia. However, immediately after the divorce he was stationed in Meridian, and lived close to Mrs. Phillips.
In March of 1988, Mrs. Phillips was dating Billy Ray Coe, a member of the armed services (Chief Petty Officer, United States Navy). She has since married him. Mr. Coe had visited Mrs. Phillips often since her divorce from Mr. Phillips. He had baby-sat her son Justin while she was at work; he had bought groceries for Mrs. Phillips; he occasionally helped pay her bills and helped Mrs. Phillips by giving her money. The only point of contention between Ron Phillips and Denise Phillips is her relationship with Mr. Coe, a relationship which the Chancellor found justified the change in child custody and the forfeiture of the residence under the Property Settlement Agreement.
The Chancellor found that Mr. Coe was a "permanent resident", which triggered the forfeiture clause of the property settlement. Mrs. Phillips and Mr. Coe denied in their testimony that Mr. Coe was a permanent *700 resident. They admitted that he did on occasion spend the night at Mrs. Phillips' home, but that he maintained a room at the barracks at the naval station. Mr. Phillips acknowledged that Mr. Coe had such a room.
Mr. Phillips hired a private investigator, Mr. Marvin Reynolds, to watch the activities of Mrs. Phillips and Justin. Reynolds testified as to when he observed Mr. Coe's vehicle at Mrs. Phillips' home in April and May of 1988. Mr. Phillips also testified extensively in regard to when Mr. Coe's vehicle was at Mrs. Phillips' house and when it was at the base.
Three of Mrs. Phillips' neighbors and friends corroborated Mrs. Phillips' testimony. They each testified that Mrs. Phillips was a good and attentive mother and that Justin had a good home life. Mrs. Inman testified that she had seen Mr. Coe at Mrs. Phillips' home, but had never seen any evidence of his living there; Mrs. Cordia, a former neighbor, who visited Mrs. Phillips at least once or twice weekly, had never seen any evidence that Mr. Coe resided there; and Mrs. Reid also stated that Mr. Coe had not moved in the house and did not reside there.
As to Justin's behavior, Mrs. Cordia, testified that Justin had difficulty when his parents were getting divorced but that he was happy and content afterwards; Mrs. Inman, who has a son with whom Justin plays, testified that Justin plays better with her son than prior to the divorce and is "more polite"; Mrs. Reid, who has two sons Justin plays with, testified that Justin is now a happy young man. She said that prior to the divorce he was very argumentative and did not play well.
Ron Phillips testified that Justin was happy until Denise Phillips and Billy Coe's friendship developed. Then, according to the father, Justin became very withdrawn, depressed and performed poorly in school. Mrs. Phillips' testified that Justin was much happier and was doing better in school. His grades started to improve at the end of his second school year, but even then he was unable to pull his reading up to passing. The only other evidence in the record concerning Justin is that he had to repeat second grade because he got an "F" in reading. Mr. Phillips testified that the reason Justin failed was because of Mrs. Phillips' and Mr. Coe's relationship. The record shows that Justin did poorly in first grade. Ron and Denise Phillips were given the option of keeping Justin back in first grade because he was in the low grade level. Mrs. Phillips wanted to hold Justin back, but Mr. Phillips refused. Justin has a neurological condition that causes him to have spells where he cannot wake up. This condition manifested itself when Justin was six to eight months old.
The Chancellor ordered that Mr. Phillips pick up Justin October 1, 1988, and take him away to his duty station. Mrs. Phillips' visitation rights were set as the first and third weekend of each month, spring break, the month of July and alternating Christmas Holidays. Mrs. Phillips was charged with all expenses of Justin's visitation.

STATEMENT OF THE LAW

I. DID THE TRIAL COURT ERROR IN CHANGING CUSTODY OF THE MINOR JUSTIN PHILLIPS FROM HIS MOTHER TO HIS FATHER SOLELY ON THE BASIS OF HIS MOTHER'S BRIEF INDISCRETIONS WITH A MAN, NOW HER HUSBAND; AND BY NOT REQUIRING ANY SHOWING THAT THE BEST INTEREST OF JUSTIN REQUIRED A CHANGE OF CUSTODY?
There are two prerequisites to a modification of child custody. First, the moving party must prove by a preponderance of the evidence that, after the entry of the judgment sought to be modified, there has been a material change in circumstances which adversely affects the welfare of the child. Second, if such an adverse change has been shown, the moving party must show by like evidence that the best interest of the child requires the change of custody. Pace v. Owens, 511 So.2d 489 (Miss. 1987); Tucker v. Tucker, 453 So.2d 1294, 1297 (Miss. 1984).
*701 This court's scope of review is limited by the substantial evidence or manifest error rule. Dunaway v. Busbin, 498 So.2d 1218, 122 (Miss. 1986); Torrence v. Moore, 455 So.2d 778 (Miss. 1984). Therefore, the Chancellor's decision to modify child custody by awarding primary custody of Justin to Mr. Phillips, cannot be overturned unless "manifest error" is shown.
The thrust of the testimony to support the change in custody was that Mrs. Phillips had a romantic and sexual relationship with Mr. Coe. The record is limited in regard to the best interest of young Justin. The trial proceeded as though the question was whether the custodial parent's sexual relations with a third person outside of marriage warranted modification of the child custody order. Such a relationship by itself does not.
This court in Kavanaugh v. Carraway, 435 So.2d 697 (Miss. 1983), stated that the Chancellor cannot use indiscretions of the custodial parent as the sole ground to change child custody but must look at the overall facts; the "totality of the circumstances" must be considered. Id. at 700. This court stated that "a change in custody should never be made for the purpose of rewarding one parent or punishing the other." Tucker v. Tucker, 453 So.2d 1294, 1297 (Miss. 1984) (emphasis added) Also, this court reversed the Chancellor, finding "manifest error" when the trial court changed custody from the mother to the father based solely on the fact that the mother's boyfriend had spent the night in her apartment on three occasions. This Court reasoned:
Furthermore, it was manifest error to hold that the facts and circumstances of this case support any modification of this child's custody. It must be recognized that uprooting a child from his mother, school, and environment was a jolting, traumatic experience. It is only that behavior of a parent which clearly posits or causes danger to the mental or emotional well-being of a child (whether such behavior is immoral or not), which is sufficient basis to seriously consider the drastic legal action of changing custody.
Id. at 1360. (emphasis added)
The Chancellor below in his opinion stated the correct legal standard regarding modification of child custody and also said he followed the law by awarding custody to the father.
First, in regard to the first prong for modification, there was no showing of an adverse affect on Justin. Mr. Phillips testified that Justin failed second grade because of Mrs. Phillips' relationship but he also testified that Justin had done poorly in first grade. In fact, Ron and Denise Phillips were married during most of Justin's second school year. There was no testimony that Justin's grades dropped off after the divorce. To the contrary, Mrs. Phillips stated that Justin's grades improved during the latter part of the year.
Secondly, there was no evidence that the change of custody was in the best interest of Justin. Indeed the record does not reflect where the child would live and who would attend to him while the father is at work or where, or if, he would attend school. Further, the Chancellor ignored the fact that the father, Ron Phillips, was under orders to report to the U.S.S. Wasp (the homeport of the U.S.S. Wasp, according to the record, is to be Pascagoula, Mississippi) for sea duty. There is no testimony as to how Justin's custody would be accomplished. The Chancellor must not only look to the well-being of a child in his present custodial circumstance, but he must note with attention to specifics the environment and conditions pertaining to the child in the future. In the case sub judice Justin was in the home, neighborhood and school that he had known throughout most of his brief life. Justin's life has been disrupted, precipitously, without a showing in this record of how he is to be cared for in the future. The Chancellor said in his opinion that it was in the best interest of Justin to change custody. The Chancellor by his ruling seems to create the very condition which serves as the reason he gave for changing custody. He did *702 not address the effect of changing custody on Justin. His reasoning was as follows:
I also find the lady would have insufficient income to care for the child and no place to live (he found that Denise forfeited her right to possession of the home), and for the reasons stated, it is in the best interest of the child to be with his father.
The Chancellor's statements and ruling helped cause Mrs. Phillips to fail the best interest test. If Mrs. Phillips needs more money to properly care for Justin, the Chancellor should consider requiring Mr. Phillips to contribute more than Fifty Dollars ($50.00) per month as child support. He certainly should not change the custody arrangements because "the lady would have insufficient income to care for the child and no place to live." It is manifest error for the Chancellor to displace the mother from the home and discontinue child support and then almost mockingly find that she fails the best interest test of Pace v. Owens, supra, and Tucker v. Tucker, supra, because of the court's acts in removing her from the home and discontinuing child support.
Most of the record deals with Billy Coe and Denise Phillips' relationship. The court below got carried away with where Mr. Coe lived and forgot the main thrust of the reason for the hearing  the welfare of Justin Phillips. The record has a minimum of testimony about any past detrimental effect on Justin and contains no testimony or showing about the future best interest of Justin. There is no testimony concerning his father's ability to care for him.
The Chancellor stated that Kavanaugh was good law and he was going to follow it, and that he had no choice but to "take the child and give the child to the father." This Court requires more than a verbal announcement of good law. It requires an adherence to and application of that law. A reading of the Chancellor's opinion leaves the strong impression that he was punishing Mrs. Phillips for acts of which he did not approve. The Chancellor stated that the reason he took Justin from his mother is as follows:
I would like to explain to you why, Mrs. Phillips. .. . I kept waiting for just one time, ... for Mrs. Phillips to say if she could, "I did wrong." She never said it. "What we did was wrong." She never said it. "The situation was not proper." Never said it... . Your lawyer said it... . Mr. Coe and Mrs. Phillips, you never said it... . we all read the paper and we all read about people living together without the benefit of marriage, many of them in the presence of their children, but I have never read any where and I challenge anybody to show it to me, that it is not contra to all the mores of society in this State and in this Nation; that this situation is not contra to all the major religions of the entire world through all recorded history; that it does not contravene the public policy of the State of Mississippi; that it is not condemned by every case of case law in the State of Mississippi.
The Chancellor would distinguish Kavanaugh, which holds a parent's indiscretion cannot be the sole ground to change custody. He stated that the mother in that case showed she was remorseful. The facts in Kavanaugh did show the mother to be remorseful. This court stated as follows:
Both Mr. and Mrs. Kavanaugh admit that their conduct was a moral error, however, there is no evidence in the record that indicates the month of cohabitation had any adverse effect on the children whatsoever.
Id. at 700. (emphasis added)
This Court in Kavanaugh was saying that even if what the mother did was a moral error, there still had to be an adverse effect on the children. The Chancellor's requiring remorse has nothing to do with the "adverse affect and best interest of Justin." The issue is the best interest of Justin, not the alleged indiscretion of his mother.
The Chancellor gave his reason for requiring remorse by Mrs. Phillips in his ruling when he said:
There is something else, too, besides society and law and religion, public policy. I submit pure common sense says it's not good ... I don't believe ... the best *703 thing to do for a child in this day and time is to move someone in the house with you, sleep there in a bedroom with them and let them become the father image, leave him there until the child's relationship with his father is already affected ... I will never, if I never know anything else, is that of the thirty-nine Judges in the Chancery Court in the State of Mississippi, this one will be reversed on every case, because I will never accept that to be the law. Never, never, never. And thank God our Courts haven't said so either.
The Chancellor was not within the parameters set by this court for custody modification. All the evidence points to the fact that Mrs. Phillips' behavior and care for Justin was in all other respects good. Her conduct was not shown to threaten the best interest of Justin. The Chancellor's opinion suggests his hostility for Mrs. Phillips' behavior.
I specifically find, Mrs. Phillips, and Mr. Coe, you intend for your relationship to resume on an overnight basis as soon as this Court is over in the presence of the child.
So, on Saturday, the 1st day of October, 1988, I want Mr. Phillips to pick up his son and take his son away to his duty station, and in the meantime  Take that lady in the hall if she can't hush. She may want to hear the rest of this. It involves her visitation. She can hush or she can leave. You make arrangements, Mr. Phillips, for school and everything you need to do. Have the child enrolled in school and have all arrangements made. Your house will be empty and you take your child back to where you will be living. Mr. Phillips, the father, will pay no further child support.
The "taking away" of Justin seems to be to chastise Mrs. Phillips for her behavior or because she was not apologetic or remorseful. This Court does not condone the behavior of Mrs. Phillips, but we will not condone punishing her by "taking" her son without proof that she is a detriment to his welfare or some attention to his future well-being.

II. DID THE CHANCELLOR ERR IN REMOVING DENISE FROM HER FORMER MARITAL HOME AT A DATE EARLIER THAN PROVIDED FOR IN THE SEPARATION AND PROPERTY SETTLEMENT AGREEMENT?
Denise and Ron Phillips executed a Separation and Property Settlement Agreement September 15, 1987, which was incorporated into the divorce decree. It provided in part that Mrs. Phillips would convey all her interest in the marital residence to Mr. Phillips which she has done. It further provided:
(b) As consideration for Wife's conveying her interest in the aforedescribed property, she shall have the right to the exclusive use and possession of said property including the home thereon. On the 1st day of October, 1990, Wife shall relinquish her exclusive use and possession in favor of Husband and she shall do so without any further notice on the part of Husband.
... .
(d) It is agreed and understood that the above-described exclusive use and possession by Wife of said residence is limited only to the extent that she and the minor child, Justin Harley Phillips, shall be the only permanent occupants thereof, and for any reason should it become necessary in the opinion of Wife to have another occupant in said home, she shall request and receive written permission from Husband for such occupant's presence and Husband agrees not to unreasonably withhold such permission. Otherwise, said exclusive use and possession shall terminate upon such other person taking up a permanent residency therein.

The question was whether Billy Coe was a permanent resident. The record does not show by a preponderance of evidence that Mr. Coe was a permanent resident.
The Chancellor found that the forfeiture clause of the Separation and Property Settlement Agreement was triggered and Mrs. Phillips was ordered out of the residence October 1, 1988. The Chancellor found that Mr. Coe was a permanent resident.
The evidence that Mr. Coe did not keep any clothes or toiletries at Mrs. Phillips' is *704 undisputed. Mr. Coe and Mrs. Phillips both testified that Mr. Coe stayed overnight on occasion. All parties agree that he maintained a room at the barracks at the naval station. Mrs. Inman, Mrs. Cordia, and Mrs. Reid, all of whom visited with Mrs. Phillips regularly, testified that they did not see any indication that Mr. Coe had moved in. Even Mr. Phillips acknowledged that Mr. Coe has a room in the barracks and that his automobile was often there.
The Chancellor was "manifestly in error" when he found Mr. Coe to be a permanent resident. The overwhelming weight of the mostly uncontradicted evidence indicated he was a frequent visitor who helped around the house.
The Separation and Property Settlement Agreement unambiguously required "permanent residence" of another to trigger the forfeiture clause. This is what Denise and Ron Phillips contracted. Billy Coe was not shown to be a permanent resident; accordingly, it was error for the Chancellor to remove Mrs. Phillips from the former marital residence prior to October 1, 1990. The court below was in error in awarding custody of the minor, Justin Phillips, to the father, Ronald Phillips; therefore, the trial court is reversed, and this Court renders as to the custody of said minor and restores said custody to the mother; further, Mrs. Phillips was ordered to vacate the residence on October 1, 1988, when she had a right of possession until October 1, 1990. This Court therefore restores her right to possession of the house until October 1, 1990, and we restore child support at $50.00 per month until October 1, 1990 and then increase it to $200.00 per month in accordance with the previous agreed decree.
REVERSED AND RENDERED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and BLASS, JJ., concur.