## IN THE SUPREME COURT OF MISSISSIPPI
### NO. 1998-CA-01480-SCT

*MONA MICHELLE (FULLER) LACKEY*

*v.*

*WILLIAM TODD FULLER*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/16/1998 |
| TRIAL JUDGE: | HON. WILLIAM H. BIZZELL |
| COURT FROM WHICH APPEALED: | COAHOMA COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | ROSS R. BARNETT, JR. |
| ATTORNEY FOR APPELLEE: | WILLIAM O. LUCKETT, JR. |
| NATURE OF THE CASE: | CIVIL - CUSTODY |
| DISPOSITION: | REVERSED AND REMANDED - 2/17/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 3/9/2000 |

## BEFORE PITTMAN, P.J., MILLS AND WALLER, JJ.

## PITTMAN, PRESIDING JUSTICE, FOR THE COURT:

### STATEMENT OF THE CASE

¶1. This is an appeal from the Coahoma Chancery Court where the appellant, Mona Michelle Fuller Lackey ("Lackey"), sought a modification of child custody. The appellee, William Todd Fuller ("Fuller"), was granted full custody of the two minor children. Lackey appeals from that ruling.

### STATEMENT OF FACTS

¶2. Fuller and Lackey were married on December 5, 1992. Two children were born of this marriage: Rachel Nicole Fuller, born on May 13, 1994, and William Chase Fuller, born on April 21, 1997.

¶3. A joint complaint for divorce on the grounds of irreconcilable differences was filed on October 7, 1997. A joint settlement agreement was filed the same day. In the settlement agreement, Fuller and Lackey agreed to joint legal custody of the children, with Fuller having primary physical custody.

¶4. Lackey moved the chancery court on November 26, 1997, for leave to withdraw the complaint for divorce and agreement. In the alternative, Lackey petitioned the court to grant a divorce on irreconcilable differences, but conduct a hearing on the issue of child custody. Fuller then filed an amended complaint for divorce on the ground of adultery, or, in the alternative, irreconcilable differences. Fuller also requested full legal and physical custody of the children.

¶5. After months of legal wrangling, Fuller and Lackey filed a marital dissolution agreement with the

chancery court on March 20, 1998. Both agreed to a divorce on the ground of irreconcilable differences. They also agreed to share joint legal and physical custody of the two children with the children spending half their time with each parent. The agreement also contained visitation schedules regarding holidays.

¶6. On March 20, 1998, chancellor Harvey T. Ross signed the final judgment of divorce. The chancellor granted the divorce on the ground of irreconcilable differences and awarded the parties joint legal and physical custody of the children. The chancellor stated in his opinion that both parents were "fit, proper and suitable persons to have the care, custody and control of the minor children, and it is in the best interest of said children that their parents be awarded joint physical and legal custody at this time. . .."

¶7. Lackey filed a motion for modification of the final judgment of divorce on July 29, 1998. In the motion, Lackey stated that she had married Brent Lackey and that he was being transferred to Rochester, New York. Lackey asked the court to grant her primary physical custody of the children with visitation rights being granted to Fuller.

¶8. A hearing was held on the motion on September 4, 1998, before the Honorable William H. Bizzell, in the Chancery Court of Coahoma County. Testimony and evidence was offered by both sides. On September 23, 1998, the chancellor filed an order granting full physical and legal custody to Fuller. Lackey appeals to this Court from this decision.

## STATEMENT OF ISSUES

**I. WHETHER THE CHANCELLOR ERRED AND ABUSED HIS DISCRETION IN DENYING FULL CUSTODY TO LACKEY AND AWARDING FULL CUSTODY TO FULLER WHEN THE CHANCELLOR ADMITTED, CONSIDERED, AND ACTED ON INADMISSIBLE EVIDENCE.**

**II. WHETHER THE CHANCELLOR ERRED AND ABUSED HIS DISCRETION IN DENYING FULL CUSTODY TO LACKEY AND AWARDING FULL CUSTODY TO FULLER BY DISREGARDING THE TENDER YEARS DOCTRINE AND FAILING TO UNDERTAKE THE ALBRIGHT ANALYSIS.**

## STANDARD OF REVIEW

¶9. This Court's review of the decision by the court below is limited by the substantial evidence or manifest error rule. ***Brocato v. Brocato**, 731 So.2d 1138, 1140 (Miss. 1999)*; ***Law v. Page,*** 618 So.2d 96, 101 (Miss. 1993); ***Polk v. Polk***, 589 So.2d 123, 129 (Miss. 1991); ***Phillips v. Phillips***, 555 So.2d 698, 701 (Miss. 1989). This Court may only disturb the decision of the chancellor to award custody of the children to Fuller if the chancellor committed manifest error in reaching his decision. ***Id.***

## DISCUSSION OF LAW

**I. WHETHER THE CHANCELLOR ERRED AND ABUSED HIS DISCRETION IN DENYING FULL CUSTODY TO LACKEY AND AWARDING FULL CUSTODY TO FULLER WHEN THE CHANCELLOR ADMITTED, CONSIDERED, AND ACTED ON INADMISSIBLE EVIDENCE.**

¶10. This Court reviews a trial judge's decision to admit evidence under an abuse of discretion standard.

*Rushing v. Rushing*, 724 So.2d 911, 914 (Miss. 1998). "Unless the trial judge's discretion is so abused as to be prejudicial to a party, this Court will not reverse his ruling." *Id.* (quoting *Stewart v. Stewart*, 645 So.2d 1319, 1320 (Miss. 1994)(citations omitted)).

¶11. Lackey asserts that the chancellor erred when he allowed into evidence testimony regarding events that occurred before the granting of the original divorce decree. At the hearing, Fuller attempted to cross-examine Lackey about an extra-marital affair she had with Brent Lackey, her present husband. Lackey objected on the grounds that the divorce was a no-fault divorce and that the particulars of the divorce had no relevance in the present hearing. The chancellor held that while the divorce decree was res judicata, information about Brent Lackey, including any pre-divorce conduct with Lackey, was not. Lackey asserts that any pre-divorce conduct, including pre-divorce conduct with Brent Lackey, is barred by the doctrine of res judicata.

¶12. The doctrine of res judicata stands for the premise that a judgment is final on all matters which might have been litigated and determined in a previous suit, as well as matters which were actually litigated and decided. *Childers v. Childers*, 717 So.2d 1279, 1280 (Miss. 1998). The doctrine of res judicata has been applied equally in divorce actions as in any other. *Newman v. Newman*, 558 So.2d 821, 823 (Miss. 1990) (citing *Bowe v. Bowe*, 557 So.2d 793, 794 (Miss. 1990); *Tedford v. Dempsey*, 437 So.2d 410, 417 (Miss. 1983); *Brocato v. Walker*, 220 So.2d 340, 343 (Miss. 1969)).

¶13. Mississippi case law is clear on issues of child custody and res judicata:

> A decree fixing the custody of a child is, however, **final on the conditions then existing** and should not be changed afterward unless on altered conditions since the decree * * * and then only for the welfare for the child. *Brocato v. Walker*, 220 So.2d 340, 342 (Miss. 1969) (quoting *Cassell v. Cassell*, 211 Miss. 841, 846, 52 So.2d 918, 921 (1951))(emphasis added). A modification of an original decree granting custody should only occur if there has been a material change in circumstances, **subsequent to the original decree**, that adversely affects the child. *Marascalco v. Marascalco,* 445 So.2d 1380, 1382 (Miss. 1984), *Cheek v. Ricker*, 431 So.2d 1139, 1143 (Miss. 1983). In *Bowe* this Court held:

> We begin with the principles of res judicata which command that a final judgment preclude thereafter all claims that were or reasonably may have been brought in the original action. . . . The familiar rule that a judgment for alimony, custody or support may be modified only upon a showing of a **post-judgment material change of circumstances** is a recognition of the force of res judicata in divorce actions. Tedford v. Dempsey, 437 So.2d 410, 417 (Miss. 1983); Brocato v. Walker, 220 So.2d 340, 343 (Miss. 1969).

*Bowe v. Bowe*, 557 So.2d 793, 794 (Miss. 1990) (emphasis added).

¶14. The original divorce decree found that both parties were "fit, proper and suitable persons to have the care, custody and control of the minor children. . .." The decree granted joint legal and physical custody of the children to the parents. Because the chancellor specifically found that both parents were fit, pre-divorce conduct is res judicata as to the hearing regarding the modification of child custody. The chancellor clearly abused his discretion in revisiting that which had already been laid to rest.

¶15. The decree then went on to grant Fuller and Lackey a divorce on irreconcilable differences. As noted

earlier, Fuller had sued for a divorce on the ground of adultery but later agreed to a divorce on the ground of irreconcilable differences. Fuller had the option of pursuing a divorce on the ground of adultery. He chose not to do so. Pre-divorce conduct regarding any extra-marital affair by Lackey with Brent Lackey is also res judicata.

¶16. Fuller asserts that because Lackey knew before the divorce that Brent Lackey was being transferred to Delaware or possibly New York and she did not inform the chancellor, the pre-divorce conduct was not res judicata. Fuller seems to imply that if the chancellor had known of the possible relocation, he might have initially granted full custody to Fuller.

¶17. Fuller's argument has one fatal flaw: Fuller himself knew before the final divorce that there was a possibility that Brent Lackey would be transferred. Fuller had taped his wife's phone conversations wherein she discussed with Brent Lackey and her mother the possibility that Brent would be transferred and that Lackey would accompany him. Whether the chancellor took this into consideration during the original divorce is irrelevant: Fuller had knowledge of the possible relocation and could have brought it to the court's attention if he wished. As such, Lackey's pre-divorce knowledge of a relocation is res judicata as to the modification.

¶18. The final judgment of divorce is res judicata as to the issue of the fitness of both Fuller and Lackey at the time of the divorce. As such, the only evidence the judge should have admitted at the hearing was evidence of post-judgment conduct. Evidence regarding Lackey leaving her husband and children in the marital home, as well as any extra-marital affair with Brent Lackey, is res judicata.

¶19. Lackey suffered severe prejudice as a result of the admission of the above evidence. In his ruling, the chancellor found that both parents were fit and suitable parents. However, the chancellor stated that there were two factors which influenced his decision to grant custody of the children to Fuller. One of those factors was that Lackey "made a very irresponsible choice in abandoning her children and husband without sufficient reason except for her infatuation with her "soul mate" who came along, . . .." If the pre-divorce conduct had not been admitted to evidence, the chancellor would have been forced to make a decision regarding child custody by applying the *Albright* analysis mandated in *Albright v. Albright*, 437 So.2d 1003, 1005 (Miss. 1983).

¶20. The chancellor used the custody decision as a way to punish Lackey for her indiscretions. This Court has long opined that this is not acceptable. In *Phillips* this Court stated that "'a change in custody should never be made for the purpose of rewarding one parent or punishing another.'" *Phillips*, 555 So.2d at 701 (*quoting Tucker v. Tucker*, 453 So.2d 1294, 1297 (Miss. 1984) (citations omitted)). In *Rushing* this Court stated that "[t]he polestar consideration in custody matters is the best interest of the child, not marital fault." *Rushing*, 724 So.2d at 916 (citing *Moak v. Moak*, 631 So.2d 196, 198 (Miss. 1994)).

¶21. The chancellor committed manifest error in admitting testimony of pre-divorce conduct into evidence.

¶22. The dissent argues that this Court applies the doctrine of res judicata only when it is convenient to do so. The dissent maintains that we failed to apply the doctrine in the recent case of *R.E. v. C.E.W.*, No. 1998-CA-01405-SCT, 1999 WL 1201961 (Miss. Dec. 16, 1999). where, at the time of the divorce, both husband and wife acknowledged that the child whose legitimacy was in question was "born of the marriage." Later the presumed father, the husband, sued to prove he was not the father of the child. The child was joined as a party, and a guardian ad litem was appointed. The dissent maintains that "res judicata

should have prevented the husband from relitigating the issue of paternity which, even if it was not actually litigated at the time of the divorce, could or should have been litigated at that time and, thus, was barred from being relitigated at a later point."

¶23. The dissent's argument regarding the doctrine of res judicata is misplaced. Case law clearly states that res judicata does not apply in this situation. In *Baker by Williams v. Williams*, this Court held that the adjudication of paternity in a divorce decree is not binding on the child. *Baker by Williams v. Williams*, 503 So.2d 249, 254-55 (Miss. 1987). Thus, the doctrine of res judicata does not bar suit when the child later sues to determine his or her paternity:

> In dealing with the prospective rights of a minor child to establish paternity, the child, it not formally a party, is not bound by a paternity determination in a marital dissolution action. Ruddock v. Ohls, 91 Cal.App.3rd 271, 154 Cal.Rptr.87 (1979). Similarly a decree in equity cannot adjudicate the rights or liabilities of persons not parties to the proceeding. Mannard v. Locke, 18 So.374 (1895); McPike v. Wells, 54 Miss. 136 (1876). See also Griffith Mississippi Chancery Practice § 612 (2d ed. 1950).

*Baker by Williams*, 530 So.2d at 254.

### II. WHETHER THE CHANCELLOR ERRED AND ABUSED HIS DISCRETION IN DENYING FULL CUSTODY TO LACKEY AND AWARDING FULL CUSTODY TO FULLER BY DISREGARDING THE TENDER YEARS DOCTRINE AND FAILING TO UNDERTAKE THE ALBRIGHT ANALYSIS.

¶24. In any custody case the polestar consideration is always the best interest of the child. *Rushing,* 724 So.2d at 916. In order to modify child custody, it must be proven that a material change in circumstances has occurred that **adversely** affects the welfare of the child and that the best interest of the child would be served in modifying custody. *Brocato,* 731 So.2d at 1141; *see also* *Wright v. Stanley,* 700 So.2d 274, 280 (Miss. 1997). However, this Court has also noted that the totality of the circumstances must be considered in modifying child custody. *Id.*

¶25. In the order granting custody to Fuller, the chancellor specifically found that both parents were fit to care for the children and that both were able to financially provide for the children. He also found that Lackey's pending move to New York was a material change in circumstances and that it was in the children's best interest to place them in the custody of Fuller.

¶26. The chancellor technically erred in applying the test for modification of child custody. This Court has repeatedly held that relocation of a parent does not necessarily result in a material change in circumstances. *Cheek*, 431 So.2d at 1144, *Brocato*, 220 So.2d at 344. Assuming *arguendo* that the move was a material change in circumstances, the chancellor did not find that there was an adverse affect on the children. However, the circumstances in this case do require a modification of child custody.

¶27. At the time of the modification hearing, the children were in the joint custody of their parents. The children spent two week intervals with each parent. Given the fact that Lackey was moving to New York, it would seem that the material change (the move to New York) would have an adverse affect on the children. Rachel was four and Chase 16 months at the time of the hearing. It is inconceivable that the children would be driven or flown back and forth between New York and Mississippi every two weeks!

¶28. The Court of Appeals has recently decided a case very similar to the one here. In *McRee v. McRee*,

the parents were given joint custody of the child. The child lived with each parent for a period of one month at a time. When the mother relocated, she petitioned the court to grant her primary custody. The chancellor noted that it would be impractical to not modify custody. He also noted that the traditional standard for modification would not allow him to change what was an impractical custody agreement. The chancellor used the Albright factors that are traditionally used in an original custody order to determine the proper custody. *McRee v. McRee,* 723 So.2d 1217, 1219 (Miss.Ct.App. 1998). The Court of Appeals approved the chancellor's handling of the case, noting that the chancellor looked to the best interest of the child in reaching his decision. *McRee*, 723 So.2d at 1220.

¶29. In this case, it would be impractical to leave custody as it stood at the time of the hearing. It is surely in the children's best interest NOT to be shuttled back and forth between New York and Mississippi every two weeks. As this Court has said:

> The test we have devised for custody modification need not be applied so rigidly, nor in such a formalistic manner so as to preclude the chancellor from rendering a decision appropriate to the facts of an individual case. In particular, it should not thwart the chancellor from transferring custody of a child from one parent to another when, in the chancellor's judgment, the child's welfare would be best served by such transfer.

*Riley v. Doerner*, 677 So.2d 740, 745 (Miss. 1996).

¶30. Lackey alleges that the chancellor should have used the tender years doctrine in his analysis. However, the tender years doctrine has all but been subsumed into the *Albright* analysis. *Mercier v. Mercier*, 717 So.2d 304, 307 (Miss. 1998). As this Court said in *Mercier*, "[t]he age of a child is simply one of the factors that we consider in determining the best interests of the child." *Id*. (citing *Albright*, 437 So.2d at 1005).

## CONCLUSION

¶31. The award of custody is reversed, and this case is remanded to the lower court. The court should employ an *Albright* analysis to determine suitable custody of the children. Further, only evidence regarding post-divorce events and conduct is admissible.

¶32. **REVERSED AND REMANDED.**

> **PRATHER, C.J., SULLIVAN, P.J., BANKS, SMITH, MILLS, WALLER AND COBB, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

> **McRAE, JUSTICE, DISSENTING:**

¶33. The majority finds that the chancellor erred in allowing evidence of conduct occurring prior to the divorce decree because such evidence was res judicata holding that any conduct of the parties occurring prior to the divorce relevant to custody should have been brought to the court's attention at the time of the initial custody determination, i.e. the divorce. Any such evidence not adduced at that time was barred from being presented thereafter. The doctrine of res judicata, the majority states "has been applied equally in divorce actions as in any other." Ordinarily, I would agree with this; however, we just eviscerated the

defense of res judicata and allowed a former husband who knew and charged his wife with adultery to circumvent an order making him the father, and, in so doing, permitted him to collect back child support that he had been ordered to pay.

¶34. Apparently, res judicata applies in some divorce actions more than others. In the recent case of **_R.E. v. C.E.W._, 1999 WL 1201961 (Miss. 1999) 1998 CA 01405**, this Court allowed a husband to sue his former wife's paramour (R.E.) to recover child support paid by the husband. It seems that the husband was not the natural father of one of the three children born of the marriage. At the time of the divorce, the husband agreed to provide support for all three children despite the fact that he knew he was not the biological father of one of the children. Some years later, the husband sued R.E. reimbursement of the child support paid by the husband on behalf of R.E.'s child. The chancellor awarded the husband credit for the support payments and this Court affirmed. In so doing, the Court wholly disregarded the fact that res judicata should have prevented the husband from relitigating the issue of paternity which, even if it was not actually litigated at the time of the divorce, could or should have been litigated at that time and, thus, was barred from being relitigated at a later point.

¶35. As the case of **_R.W. v. C.E.W._** demonstrates, this Court applies res judicata when it leads to the desired results and ignores res judicata when it does not.

¶36. The majority reverses the Chancellor's decision to award primary custody to the father and remands the case for an evaluation of the **_Albright_** factors. However, just because the Chancellor in this case may not have articulated each and every **_Albright_**[1] factor in his ruling, there is no reason to presume that he did not consider those factors in determining that the best interests of the children was to have primary custody awarded to their father. We have never previously required a chancellor to enunciate each and every factor on the record. Indeed, **_Albright_** refers to these factors as "guidelines" that should not cause the chancellor to lose sight of the principal consideration, which is the "best interest of the child." **_Albright v. Albright_**, 437 So.2d 1003, 1005 (Miss.1983). We held in **_Torrence v. Moore_**, 455 So.2d 778 (Miss.1984) that although the chancellor discussed only some of the **_Albright_** factors, it should not necessarily be presumed that he ignored those factors he did not discuss. This Court has held since 1848 that we will not disturb the finding of a Chancellor unless he is clearly wrong. **_Carr v. Carr_**, 480 So.2d 1120, 1124 (Miss. 1985). As I can find no clear error in the chancellor's decision to award primary custody to the father, I dissent.

1. **_Albright v. Albright_**, 437 So.2d 1003, 1005 (Miss.1983).