974 So.2d 274 (2008)
Lorena T. WEBB, Appellant
v.
Jeffery R. WEBB, Appellee.
No. 2006-CA-01701-COA.
Court of Appeals of Mississippi.
February 5, 2008.
*275 H.R. Garner, Hernando, attorney for appellant.
Jason D. Herring, Tupelo, attorney for appellee.
Before LEE, P.J., IRVING and ROBERTS, JJ.
LEE, P.J., for the Court.

FACTS AND PROCEDURAL HISTORY
¶ 1. Lorena and Jeffery Webb were married on August 19, 2000, in Lee County, Mississippi. The parties separated in January 2006. One child, Brayden Webb, was born of the marriage on February 16, 2005. Lorena's daughter from a previous relationship also lived with the couple. The couple was granted a divorce in September 2006, and custody of Brayden was awarded to Jeffery. Lorena now appeals arguing that the chancellor erred by not awarding her custody of Brayden.
¶ 2. Lorena was Brayden's primary care-giver for the first six months of his life. In August 2005, Lorena began a job at Tri-Lakes Emergency Room in Batesville, Mississippi, and the parties shared the care-taking responsibilities of the child. A month after beginning work at Tri-Lakes, *276 Lorena met Dr. Robert Mayfield, with whom she later had an affair. Other pertinent facts regarding Jeffery and Lorena and Brayden's care will be discussed as relevant in analyzing the issue of child custody.
¶ 3. Jeffery filed a complaint for divorce in the Chancery Court of Calhoun County on March 9, 2006, on the ground of adultery or, in the alternative, irreconcilable differences. The parties agreed upon many issues regarding the divorce, including division of a majority of the marital assets. A hearing was held regarding the custody of the minor child, child support, and attorney's fees. Following the hearing, the chancellor entered an opinion ordering that Jeffery be granted a divorce on the ground of adultery. The chancellor also awarded custody of Brayden to Jeffery. Lorena was awarded visitation rights and ordered to pay $400 a month in child support until the emancipation of the child.
¶ 4. Aggrieved by the chancellor's decision, Lorena appeals citing the following issue: the chancellor erred in granting Jeffery physical custody of Brayden.
¶ 5. Finding no error, we affirm.

STANDARD OF REVIEW
¶ 6. This Court will not disturb the findings of a chancellor unless we find an abuse of discretion, an erroneous application of law, or manifest error. Andrews v. Williams, 723 So.2d 1175, 1177(¶ 7) (Miss. Ct.App.1998). Thus, if we find substantial evidence in the record to support the chancellor's findings, we will not reverse. Wilbourne v. Wilbourne, 748 So.2d 184, 186(¶ 3) (Miss.Ct.App.1999).
¶ 7. An appellate court must find a chancellor in error where the chancellor improperly considered and applied the Albright factors. Hollon v. Hollon, 784 So.2d 943, 946(¶ 11) (Miss.2001). In determining whether the chancellor abused his discretion in applying the Albright factors, the appellate court "reviews the evidence and testimony presented at trial under each factor to ensure [the chancellor's] ruling was supported by record." Id. at 947(¶ 13).

DISCUSSION
¶ 8. It is well settled that in child custody cases, the polestar consideration is the best interest of the child. Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983). The factors used to determine what is in the best interest of a child with regard to custody are: (1) the age, health, and sex of the child; (2) a determination of the parent who had the continuity of care prior to the separation; (3) which parent has the best parenting skills and which has the willingness and capacity to provide primary child care; (4) the employment of the parents and responsibilities of that employment; (5) the physical and mental health and age of the parents; (6) the emotional ties of the parent and child; (7) moral fitness of the parents; (8) the home, school, and community record of the child; (9) the preference of the child at the age sufficient to express a preference by law; (10) the stability of home environment and employment of each parent; and (11) other factors relevant to the parent-child relationship. Id. The chancellor found eight factors to be neutral and three to weigh in Jeffery's favor.
¶ 9. On appeal, Lorena questions the chancellor's ruling on the following factors which she believes weigh in her favor: (1) the age, health, and sex of the child, (2) continuity of care, (4) employment responsibilities of the parents, (7) moral fitness of the parents, and (10) stability of the home environment and employment of each parent. We will discuss the chancellor's conclusions *277 on each Albright factor with emphasis on those which Lorena argues were in error.
1. Age, health, and sex of the child
¶ 10. At the time of trial, Brayden was a healthy eighteen-month-old boy. The chancellor found that both parents were fit to take care of Brayden and held that Brayden's age and sex did not weigh in favor of either parent. Lorena argues that the chancellor committed reversible error by not weighing Brayden's young age in her favor.
¶ 11. Although weakened over the years, the tender years presumption is still a viable consideration. Lee v. Lee, 798 So.2d 1284, 1289(¶ 18) (Miss.2001). Consequently, this factor probably should have weighed slightly in favor of Lorena unless given an explanation otherwise. See Copeland v. Copeland, 904 So.2d 1066, 1075 (¶¶ 34-36) (Miss.2004) (finding age factor to weigh slightly in favor of mother of eighteen-month-old male). However, in Law v. Page, 618 So.2d 96, 101 (Miss.1993), our supreme court held that "the tender years doctrine seems less controlling, especially when considering [the child's] male gender." We cannot find that the chancellor's conclusion on this issue rises to the level of manifest error, and certainly does not warrant reversal, since the tender years doctrine is only a presumption to be considered along with the other Albright factors. Copeland, 904 So.2d at 1075(¶ 34).
2. Continuity of care
¶ 12. As for continuity of care, the chancellor found neither parent to have an advantage. Lorena argues that the chancellor erred in not weighing this factor in her favor because she had been Brayden's primary caregiver for the majority of his life.
¶ 13. The parties do not dispute that for the first six months of Brayden's life Lorena was his primary caregiver. The chancellor found Jeffery to be the primary caregiver for the following eight months due to Lorena working a nursing job at night in Batesville. For the remaining few months before the hearing, the chancellor found the care-taking responsibilities were shared equally.
¶ 14. Although Brayden was only eighteen months old at the time of the hearing, the record does not show that Lorena spent significantly more time with Brayden than Jeffery. We cannot find that the chancellor erred in not favoring either party as to continuity of care.
3. Parenting skills and willingness and capacity to provide child care
¶ 15. The chancellor found both parties had good parenting skills and were willing to provide child care so neither party was favored on this factor. Lorena does not take issue with Jeffery's parenting skills.
4. Employment responsibilities
¶ 16. The chancellor found Jeffery to have an advantage in the employment and employment responsibilities factor because of his twenty-year tenure with FMC Technology. Lorena argues that she should have been favored with regard to employment responsibilities because Jeffery works long hours and travels occasionally with his job. She asserts that this goes to the stability of the home environment also because she would be able to stay home with Brayden while Jeffery would have to leave Brayden with his parents while he was at work.
¶ 17. The chancellor noted that Lorena was, in a good profession as a registered nurse and had changed jobs to better herself and to be with her children. Regardless, the chancellor found Jeffery's job stability *278 more persuasive. Jeffery worked and resided in Saltillo and was employed by FMC Technology as an after marketing and systems manager. He lived less than three miles from his job and from his parents. He traveled approximately four to six days a month. When he traveled, his parents, who are sixty-five and sixty-three years old, took care of Brayden. His parents also took care of two other grandchildren. A human resources manager for FMC testified that Jeffery was an excellent employee. He also testified that Jeffery's work schedule was flexible and could be arranged to allow him to work from home on occasion to take care of Brayden.
¶ 18. Lorena lived in Calhoun City and was employed as a registered nurse at Baptist Memorial Hospital in Oxford. She worked twenty-four hours a week. She had health insurance and a 401k plan. She testified that she was able to schedule the days she worked and would schedule her work time on the weekends when Jeffery had custody of Brayden. When Lorena was unable to stay with Brayden, a nanny, Mrs. Barbara Webb (no relation to the Webbs), kept him. The chancellor noted that when the couple was having difficulties in their marriage Jeffery offered Lorena $22,000 to do with as she pleased if she would quit her job and return home. At this point, Lorena had already decided the marriage was over and that she needed to keep her job because she would soon be a single parent.
¶ 19. The chancellor based his decision on Jeffery's job stability and the fact that he worked close to home. Also, the chancellor noted that when Jeffery needed a sitter his parents were able to help and Lorena had to rely on a friend. The chancellor found that it was better for Brayden to be with family if he could not be with a parent. We cannot find that the chancellor, sitting as the fact-finder, abused his discretion in making this decision.
5. Physical and mental health and age of the parents
¶ 20. Lorena was thirty-five years old, and Jeffery was forty-five at the time of trial. Neither parent had a physical or mental health problem that would be a detriment to the child. The parties were found to be even under this factor, and this issue is not disputed on appeal.
6. Emotional ties
¶ 21. The chancellor found strong ties between Brayden and each parent. The parties were found to be even on this factor, and this issue is not disputed.
7. Moral fitness
¶ 22. The chancellor found the moral fitness factor weighed in favor of Jeffery. Lorena's main argument on appeal is that the chancellor placed an excessive and inappropriate amount of weight on her moral fitness when awarding custody of Brayden to Jeffery. She argues that the chancellor's decision was not based on the best interest of the child but was rather to punish her for having an affair. We cannot find the chancellor's ruling to be an indictment against Lorena. In fact, the chancellor questioned both parents' morals.
¶ 23. Jeffery admitted a tendency to view pornography. The chancellor noted that Lorena was very upset when she found out Jeffery was watching pornographic material on the computer and renting pay-per-view movies six months into their marriage. Jeffery testified that he did not believe his watching pornography had an effect on the children and that he only watched it on his laptop after everyone else went to bed. He stated that he had not viewed these types of videos *279 since November 2005. He also testified that he visited topless bars four or five times a year entertaining clients and that it was the usual practice of the industry. He knew Lorena did not approve of his actions.
¶ 24. Although Lorena contends that the chancellor chastised her for having an affair, we cannot find that he placed too much emphasis on this factor. The chancellor stated, "[t]he Court cannot punish you because of your adulterous relationship. The cases are explicit on that. But I've got to take everything in toto, as we say, and try to come up with what is best for Brayden T. Webb. . . ." The chancellor's main concern with Lorena's adultery seemed to be Dr. Mayfield's presence around the children. He noted that Jeffery had never looked at pornography in the presence of the children, but Lorena allowed Dr. Mayfield to be present in her home.
¶ 25. The chancellor carefully considered the moral fitness of both parents and determined that it was in Brayden's best interest for Jeffery to be given the advantage in this factor. We find the chancellor's decision to be supported by the record and not in error.
8. Home, school, and community record
¶ 26. The chancellor found the child too young for this factor to apply.
9. Preference of the child
¶ 27. The chancellor correctly found the preference of the child inapplicable as the child was too young to state a preference. Miss.Code Ann. § 93-11-65(1)(a) (Rev. 2004).
10. Stability of home environment and employment of each parent
¶ 28. The chancellor found both homes to be "as stable as they can be under the circumstances." Neither party was given an advantage under this factor, and no argument is made that the chancellor's ruling was in error.
11. Other factors
¶ 29. The chancellor found Jeffery's extended family living nearby to be a factor in his favor. His parents, brother, and sister-in-law testified that they lived close by and were willing to help out with Brayden if necessary. Also, Jeffery's parents offered to keep Brayden during the day Monday through Friday while. Jeffery worked.
¶ 30. The chancellor stated in his opinion that this was a very close case, but his main concern was the child. The chancellor had the benefit of personally evaluating the testimony of the witnesses, and he carefully considered his decision. We find the argument on appeal that the chancellor improperly weighed the Albright factors to be without merit.
¶ 31. THE JUDGMENT OF THE CALHOUN COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., MYERS, P.J., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR. CARLTON, J., CONCURS WITH SEPARATE WRITTEN OPINION, JOINED BY KING, C.J., IRVING, GRIFFIS, BARNES AND ISHEE, JJ.
CARLTON, J., Concurring:
¶ 32. I write separately to express my concern over the chancellor's gratuitous comments during the trial and in his opinion. In weighing the Albright factors, the chancellor noted in his opinion that when *280 the couple was having difficulties in their marriage, Jeffery offered Lorena $22,000 to do with as she pleased if she would quit her job and return home. The chancellor further noted that Lorena had already decided the marriage was over and that she needed to keep her job because she would soon be a single parent.
¶ 33. Whether or not Lorena chose to accept money as a lure to return home is irrelevant to an analysis of the best interest of the child under the factors set forth in Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983). The Mississippi Supreme Court held that using custody decisions as a way to punish a parent for her indiscretions is unacceptable. Lackey v. Fuller, 755 So.2d 1083, 1087(¶ 20) (Miss. 2000) (citing Phillips v. Phillips, 555 So.2d 698, 701 (Miss.1989)). Further, "[t]he polestar consideration in custody matters is the best interest of the child, not marital fault." Rushing v. Rushing, 724 So.2d 911, 916(¶ 24) (Miss.1998) (citing Moak v. Moak, 631 So.2d 196, 198 (Miss.1994)) (emphasis added). It is concerning that the chancellor deemed it appropriate to mention Lorena's choice to decline the money in his analysis of the best interests of the child with respect to custody. It appears that the chancellor was indeed punishing Lorena for her choice when he should have been focused on the Albright factors.
¶ 34. There is further evidence of the chancellor's disapproval of Lorena in other comments he made during the course of the trial. As she testified that she was a good mother, the chancellor interrupted her to say, "Well, you are a loose woman, you are a loose woman also." He interrupted another of her responses related to her relationship with Dr. Mayfield stating, "humans should be a step above wild animals." The chancellor's derogatory comments were inappropriate and unnecessary in his analysis of the Albright factors.
¶ 35. I do not, however, write to dissent from the majority opinion. In reviewing the entirety of the chancellor's analysis regarding the Albright factors and the evidence in support thereof, I cannot say that he erred. As the majority noted, our standard of review is limited to determining whether the chancellor abused his discretion, and unless he so abused his discretion as to prejudice a party, we will not reverse his ruling. Lackey, 755 So.2d at 1086(¶ 10) (quoting Rushing, 724 So.2d at 914). Further, we "will affirm the [child custody] decree if the record shows any ground upon which the decision may be justified. We will not arbitrarily substitute our judgment for that of the chancellor who is in the best position to evaluate all factors relating to the best interests of the child." Mosley v. Mosley, 784 So.2d 901, 905-906(¶ 15) (Miss.2001) (quoting Yates v. Yates, 284 So.2d 46, 47 (Miss.1973)). Because the record shows grounds which justify the chancellor's decision to grant custody to Jeffery, I concur with the majority.
KING, C.J., IRVING, GRIFFIS, BARNES AND ISHEE, JJ., JOIN THIS OPINION.