LEE, C.J.,
for the Court:
¶ 1. In this child-custody matter, we must determine whether the chancellor erred in modifying the custody of the parties’ three children by giving the father primary physical custody of them.
PROCEDURAL HISTORY
¶ 2. Tamara K. Summerlin (Tamara) and George Michael Eldridge (Mike) were married on July 16, 1994. The Union County Chancery Court granted the couple a divorce on May 24, 2011. In the final judgment of divorce, which included the property-settlement agreement, Tamara was awarded custody of the couple’s youngest two daughters, Haley and Grace. Mike was awarded custody of the couple’s oldest daughter, Madison. Four days after the divorce was granted, Tamara married Del Summerlin and moved to Alabama, taking Haley and Grace with her.
¶ 3. On August 1, 2011, Tamara filed a motion for modification, seeking to change custody of Madison and Haley. Mike agreed, and the parties submitted an agreed order on August 19, 2011. Custody of Madison was changed from Mike to Tamara, while custody of Haley was changed from Tamara to Mike. Over the next several months, the parties each filed motions for contempt and modification. After a hearing on February 27, 2012, concerning an emergency petition filed by Mike, the chancellor maintained Tamara’s custody of Madison and Grace and Mike’s custody of Haley. However, the parties subsequently agreed that Madison would live with Mike. The only pending issue was Grace’s custody. During the litigation, the chancellor appointed a guardian ad litem, Regan S. Russell.
¶ 4. After a hearing, the chancellor issued a final judgment on October 4, 2012, awarding primary physical custody of all three children to Mike. Tamara filed a motion to reconsider, which was denied.
If 5. Tamara now appeals, asserting the chancellor erred by (1) allowing testimony concerning matters prior to the August 19, 2011 order, and (2) modifying custody. Finding no error, we affirm.
STANDARD OF REVIEW
¶ 6. This Court has a limited standard of review in domestic-relations cases. Arrington v. Arrington, 80 So.3d 160, 164 (¶11) (Miss.Ct.App.2012). We will not reverse a chancellor’s findings on a modification of custody unless the chancellor was manifestly ■wrong or clearly erroneous, or applied an improper legal stan *1263 dard. In re E.C.P., 918 So.2d 809, 822 (¶ 58) (Miss.Ct.App.2005) (citing Mabus v. Mabus, 847 So.2d 815, 818 (¶8) (Miss.2008)).
¶ 7. In appeals from child-custody decisions, our polestar consideration, like the chancellor’s, must be the best interest of the child. Montgomery v. Montgomery, 20 So.3d 39, 42 (¶ 9) (Miss.Ct.App.2009) (quoting Hensarling v. Hensarling, 824 So.2d 583, 587 (¶8) (Miss.2002)). “So long as there is substantial evidence in the record that, if found credible by the chancellor, would provide support for the chancellor’s decision, this Court may not intercede simply to substitute our collective opinion for that of the chancellor.” Hammers v. Hammers, 890 So.2d 944, 950 (¶ 14) (Miss.Ct.App.2004) (quoting Bower v. Bower, 758 So.2d 405, 412 (¶ 33) (Miss.2000)).
DISCUSSION
I. EVIDENCE OF PRIOR CONDUCT
¶ 8. Tamara argues the chancellor erred in allowing testimony concerning matters that occurred prior to the August 19, 2011 order. According to Lackey v. Fuller, 755 So.2d 1083, 1086 (¶ 13) (Miss.2000), this practice is not permissible because of the res judicata principle. Tamara is correct that res judicata prohibits the chancellor from considering circumstances that occurred prior to the decree being considered for modification. Id. However, in this instance, the order awarding the custody of Grace to Tamara was entered on May 24, 2011, and not on August 19, 2011. The August 19, 2011 order changes custody of Madison and Haley but does not mention Grace.
¶ 9. Furthermore, in denying Tamara’s motion to reconsider, the chancellor noted that the only “evidence of events predating the original divorce decree was considered as impeachment evidence to [Tamara’s] and Del’s testimony.” The chancellor found the facts distinguishable from those in Lackey. Our review of a chancellor’s decision to admit evidence falls under the familiar abuse-of-discretion standard. Id. at (¶ 10). In this instance, we find no abuse of discretion by the chancellor. This issue is without merit.
II. MODIFICATION
¶ 10. In her other issue on appeal, Tamara contends the chancellor erred in modifying custody of Grace. To successfully move to modify custody of a child, a noncustodial parent must prove by a preponderance of the evidence that (1) “a substantial change in circumstances has transpired since issuance of the custody decree,” (2) “this change adversely affects the child’s welfare,” and (3) “the child’s best interest mandates a change of custody.” McDonald v. McDonald, 39 So.3d 868, 880 (¶ 37) (Miss.2010) (citation omitted). “A modification of custody is warranted in the event that the moving parent successfully shows that an application of the Albright[1] factors reveals that there had been a material change in those circumstances which has an adverse effect on the child and modification of custody would be in the child’s best interest.” Johnson v. Gray, 859 So.2d 1006, 1013 (¶33) (Miss.2003) (citing Sanford v. Arinder, 800 So.2d 1267,1272 (¶ 18) (Miss.Ct.App.2001)).
¶ 11. The chancellor found the following amounted to a material change in circumstances: (1) Tamara’s marriage and relocation to Alabama; (2) Tamara and Del’s interference with Mike’s visitation and contact with Grace; (3) an incident occurring *1264 in February 2012; (4) “Del’s presence has generated an oppressive atmosphere in Tamara’s home for the children”; (5) Del’s deteriorating relationship with Tamara’s other two children; (6) Del’s two sons teasing Grace; (7) Del requiring Grace to call him “Daddy Del” against Mike’s wishes; (8) Tamara’s recent smoking habit, and Grace’s exposure to it; (9) Del’s admission that he tape records the telephone conversations between Mike and Grace; and (10) Tamara’s other children no longer desire to live with her due to Del’s behavior. The chancellor also had concerns about Tamara’s credibility.
¶ 12. The February 2012 incident involved Del confronting Madison about her desire to live with Mike. Grace and Tamara were also present. Del became angry and ultimately approached Madison in a confrontational manner. Tamara interceded, and Del yelled that they “could all f* * *ing rot in hell.” After Del left the house, Tamara locked herself, Madison, and Grace in her bedroom and kept a loaded firearm nearby. Tamara conceded she was worried about the safety of her children. Tamara called Mike and informed him of what had occurred. Tamara then sent Madison and Grace to stay with Mike. This incident prompted the emergency hearing of February 27, 2012. Tamara’s sister, Dee, testified Tamara was afraid of Del.
¶ 13. Jennifer, Tamara’s oldest child from another relationship, testified that Del had a temper and verbally attacked everyone living in the house. Jennifer testified she lived with Tamara and Del for approximately one and a half months but refused to move to Alabama with them due to her fears concerning Del. Madison testified she was afraid of Del because he frequently yelled at them. Haley testified she wanted to live with Mike and did not want Del present during her visitation with Tamara.
¶ 14. After determining that a material change of circumstances existed, the chancellor considered the following factors to determine whether a change of custody was in Grace’s best interest: (1) age, health, and sex of the child; (2) which parent had the continuity of care prior to the previous modification; (3) which parent has the best parenting skills and which has the willingness and capacity to provide primary child care; (4) the employment of each parent and responsibilities of that employment; (5) physical and mental health and age of the parents; (6) emotional ties of the parents and child; (7) moral fitness of the parents; (8) the home, school, and community record of the child; (9) the preference of the child at the age sufficient to express a preference by law; (10) stability of the home environment and employment of each parent; and (11) other factors relevant to the parent-child relationship. Albright v. Albright, 437 So.2d 1003,1005 (Miss.1983).
¶ 15. The chancellor conducted a thorough analysis of each factor and determined that it was in Grace’s best interest to live with Mike. The chancellor found only the first factor—age, health, and sex of the child—to favor Tamara and the second factor—continuity of care—only partially favored Tamara in regard to Grace’s care. Upon review of the record, we find sufficient evidence to support the chancellor’s decision to modify custody of Grace to Mike.
¶ 16. THE JUDGMENT OF THE UNION COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, *1265 CARLTON, MAXWELL AND FAIR, JJ., CONCUR. JAMES, J„ NOT PARTICIPATING.

. Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983).