CARLTON, J., for the Court:
 

 ¶ 1. Erica Wheat appeals the Lowndes County Chancery Court’s judgment regarding child custody. After a hearing, the chancellor awarded full custody of the minor child to the father, Thanasis Kousto-valas, with Erica, the mother, entitled to reasonable visitation. Erica appeals, arguing that: (1) the chancellor erred in his
 
 *609
 
 Albright
 
 [1]
 
 analysis, and (2) the chancellor’s final order granting custody to Thanasis is erroneous due to its ambiguity. Finding no error, we affirm.
 

 FACTS
 

 ¶ 2. Erica and Thanasis shared one son, Thomas, who was born on September 15, 2005. Although the parties never married, they lived together for over a year after the birth of their son. At the time of the trial, Erica was twenty-two years old, and Thanasis was twenty-seven years old. Per a temporary court order issued prior to the trial, Erica retained full custody of Thomas, and Thanasis was given visitation rights every other weekend. However, due to Erica’s work schedule, Thanasis kept Thomas three nights of each week, and Erica kept him four nights.
 

 ¶ 3. Erica works as a manager at Domino’s Pizza in Columbus. She admitted to using cocaine in the past, but according to her testimony, she had stopped using the drug approximately three months prior to the trial. As a result of her drug use, Erica wrote approximately six bad checks, which she was repaying through the District Attorney’s Bad Check Unit at the time of trial. Erica was also arrested for disorderly conduct for fighting with Thana-sis at his home.
 

 ¶ 4. After the parties separated, Thomas lived with Erica in various locations. At the time of trial, Thomas was approximately three years old. For six months prior to the trial, Erica and Thomas had been living with Erica’s parents and her two brothers in a three-bedroom home, where she and Thomas shared a room and a bed. Thanasis is currently married and employed as a jet refueler with Olgoonik Logistics LLC in Columbus. Thanasis and his wife, Crystal, live in a three-bedroom home. At the time of trial, Thomas did not have health insurance. Despite Thomas’s health problems, including a breathing condition, Erica allowed his Medicaid coverage to lapse.
 

 ¶5. After a trial held on October 17, 2008, the chancellor awarded full custody of Thomas to Thanasis, with Erica entitled to reasonable visitation. The chancellor also ordered Erica to pay $135 per month in child support to Thanasis. Aggrieved, Erica now appeals.
 

 STANDARD OF REVIEW
 

 ¶ 6. The standard of review in child-custody cases is limited, and in order to reverse the chancellor’s findings, the chancellor must be manifestly wrong, clearly erroneous, or have applied an erroneous legal standard.
 
 Hensarling v. Hensarling,
 
 824 So.2d 583, 586 (¶ 7) (Miss.2002). “In determining whether the chancellor abused his discretion in applying the
 
 Albright
 
 factors, the appellate court ‘reviews the evidence and testimony presented at trial under each factor to ensure the chancellor’s ruling was supported by record.’ ”
 
 Webb v. Webb,
 
 974 So.2d 274, 276 (¶ 7) (Miss.Ct.App.2008) (citing
 
 Hollon v. Hollon,
 
 784 So.2d 943, 947 (¶ 13) (Miss.2001)).
 

 DISCUSSION
 

 I. Application of the
 
 Albright
 
 Factors
 

 ¶ 7. Erica argues that the chancellor erred in his application of the
 
 Albright
 
 factors to the facts of this case. Specifically, she contends that the chancellor failed to address Thomas’s age in the analysis. Erica also points out that nowhere in the chancellor’s opinion does he articulate that Thomas falls within the tender-years doctrine. Erica cites
 
 Hollon,
 
 784 So.2d at 947
 
 *610
 
 (¶ 14), claiming that the Mississippi Supreme Court reversed and remanded the judgment of the chancellor where he failed to address the age of the child when applying the
 
 Albright
 
 factors. However, we note that the chancellor’s judgment was reversed and the case was remanded because the supreme court found that “the chancellor abused his discretion by placing too much weight upon the ‘moral fitness’ factor and ignoring the voluminous evidence presented under the remaining factors supporting [the mother] as the preferred custodial parent.”
 
 Id.
 
 at 952 (¶ 39). However, in weighing the factors set forth by case law, the chancellor found that awarding custody to Thanasis was in Thomas’s best interest.
 

 ¶8. The supreme court has stated that the polestar consideration in child-custody cases remains the best interest of the child.
 
 Albright,
 
 437 So.2d at 1005. The factors used to determine what is in the best interest of a child with regard to custody are as follows: (1) the age, health, and sex of the child; (2) a determination of the parent who has had the continuity of care prior to the separation; (3) which parent has the best parenting skills and which has the willingness and capacity to provide primary child care; (4) the employment of the parents and responsibilities of that employment; (5) the physical and mental health and age of the parents; (6) the emotional ties of the parent and child; (7) moral fitness of the parents; (8) the home, school, and community record of the child; (9) the preference of the child at the age sufficient to express a preference by law; (10) the stability of home environment and employment of each parent; and (11) other factors relevant to the parent-child relationship.
 
 Id.
 
 In the present case, the chancellor found four of the above factors to be neutral, five to weigh solely in Thanasis’s favor, and one factor to weigh solely in Erica’s favor.
 

 ¶ 9. The chancellor’s opinion states the following under the heading of Age, Sex, and Health of the Child:
 

 The child in this matter is a three (3) year-old male who is in relatively good health. He currently suffers from breathing problems[,] and there is the possibility that he may have a speech impediment. [Erica] has allowed Thomas’s medicaid coverage to lapse. [Thana-sis] is capable and willing to provide medical coverage. This factor favors [Thanasis].
 

 ¶ 10. The supreme court has established the tender-years doctrine, which states that if the mother of a child of tender years is fit, then she should have custody of the child.
 
 Lee v. Lee,
 
 798 So.2d 1284, 1289 (¶ 17) (Miss.2001). However, this doctrine has weakened over the years and, thus, “seems less controlling, especially when considering [the child’s] male gender.”
 
 Law v. Page,
 
 618 So.2d 96, 101 (Miss.1993). Although still a viable presumption, the tender-years doctrine weighs in favor of the mother
 
 unless
 
 the chancellor gives an explanation otherwise.
 
 Webb,
 
 974 So.2d at 277 (¶ 11). In the present ease, the chancellor acknowledged Thomas’s young age, but he found that this factor actually favored the father. The chancellor explained that he based his analysis on Erica’s negligent handling of Thomas’s healthcare coverage and the fact that Thanasis was capable and willing to provide such coverage.
 

 ¶ 11. Erica asserts that the chancellor erroneously found that the factor examining the employment of the parents and responsibilities of that employment favored neither party. Instead, Erica submits that the chancellor should have found that this factor favored her, due to the fact that when Thomas is in her care, Erica’s
 
 *611
 
 mother — Thomas’s maternal grandmother — baby-sits the child until Erica comes home from work. The record shows that when Thomas is in Thanasis’s care, Thana-sis’s wife baby-sits the child until Thanasis comes home from work. Erica claims that the chancellor showed unfair preference by allowing Thomas to spend evenings with his stepmother as opposed to his natural maternal grandmother.
 

 ¶ 12. The record reflects that neither the maternal grandmother nor Thanasis’s wife testified at the hearing. In addition, we note that both parents work roughly the same schedules. We do not find any evidence in the record to suggest that the chancellor abused his discretion in finding that factor regarding the employment of the parents favors neither Erica nor Tha-nasis.
 

 ¶ 13. Erica further argues that the chancellor erred in finding that the
 
 Al-bright
 
 factor examining the physical and emotional fitness and age of the parents “slightly favors” Thanasis. The chancellor’s opinion reflects that after applying this factor to the facts of the present case, he found that both parents were of an age to adequately care for Thomas, and both were physically and emotionally fit. However, the chancellor acknowledged Erica’s arrest and subsequent conviction for disorderly conduct; thus, he concluded that this factor slightly favored Thanasis. Erica claims that there was insufficient testimony or evidence in the record to justify the chancellor weighing this factor in favor of Thanasis. However, upon review of the record, we find that Erica testified in front of the chancellor that she had been arrested for and convicted of disorderly conduct, which stemmed from an altercation between herself and Thanasis. We also note that the record reflects that only Erica, and not Thanasis, was arrested at this time. The record also reflects Erica engaged in the use of illegal drugs as recent as three months prior to trial.
 

 ¶ 14. Next, Erica claims when applying the moral fitness factor, the chancellor erred by focusing on Erica’s bad decisions. She claims that in doing so, the chancellor intended to penalize her for her past indiscretions. In his judgment, the chancellor noted that:
 

 Since the parties separated, approximately two years ago, [Erica] has been convicted of disorderly conduct. In addition, after this Court entered a temporary order in July 2008, awarding [Erica] temporary custody of her child, she subsequently had sexual relations with a fellow co-employee [Karriem Hamilton] who supplied her with cocaine for three months. As a result, [Erica] has written numerous bad checks and is currently paying for the same, as well as fines, through the District Attorney’s Bad Check Unit. Her drug use and bad check writing occurred three months prior to the trial. [Erica] asserts that she has changed her life around. She is living with her parents and is no longer associating with Karriem Hamilton. This factor favors [Thanasis].
 

 Erica argues that the chancellor failed to mention in his judgment that Thanasis had sexual relations with a co-worker, now his wife, while he was living with Erica. Although the record reflects that Thanasis and Erica lived together for a period of time after Thomas’s birth, conflicting testimony exists as to whether the two were ever in a romantic relationship. In addition, the record' shows that at the time of trial, Thanasis and the co-worker had been married for a year, are both employed, and currently live together in a three-bedroom house. In short, at the time of trial, Tha-nasis enjoyed a stable marriage.
 

 
 *612
 
 ¶ 15. We note that in child-custody matters, the court’s focus should not be on the past wrongdoing of the parents but, “rather, on what is the best interest of the child in the present.”
 
 Williams v. Stockstill,
 
 990 So.2d 774, 778 (¶ 16) (Miss.Ct.App. 2008). At the time of trial, the chancellor found that Erica had recently made efforts to turn her life around. Still, in
 
 Riley v. Doerner,
 
 677 So.2d 740, 744 (Miss.1996), the supreme court stated that “[a] child’s resilience and ability to cope with difficult circumstances should not serve to shackle the child to an unhealthy home, especially when a healthier one beckons.” We find that the chancellor faced a difficult decision as both parents possessed flaws, but the chancellor’s findings were supported by the evidence and based on the best interest of the child.
 

 ¶ 16. Erica also asserts that the chancellor failed to provide a reason why he found that the factor examining Thomas’s home, school, and community record favored Thanasis. We acknowledge that the chancellor states in his judgment that although both parents share the responsibility of taking Thomas to daycare, Tha-nasis covers the costs associated with daycare, including the monthly rate and supplies.
 

 ¶ 17. The chancellor’s judgment awarding custody of Thomas to Thanasis was supported by substantial evidence in the record; therefore, we find no error in the chancellor’s application of the
 
 Albright
 
 factors in the present case.
 

 II. Ambiguity
 

 ¶ 18. Erica next asserts as error that the chancellor’s final order granting custody to Thanasis should be set aside due to the ambiguity of the term “custody.” Erica argues that legally, the word “custody” has two meanings: legal and physical. She concedes that the chancellor’s judgment clearly awards primary physical custody to Thanasis, but she maintains that the court remained silent in its ruling regarding legal custody of Thomas.
 

 ¶ 19. We disagree. The chancellor never used the term “primary” custody in his award to Thanasis; rather, the chancellor simply awarded custody to the father. While the chancellor could have more specifically articulated that he granted both legal and physical custody to the father, we find that a plain reading of the judgment clearly awards all custody rights of Thomas to Thanasis. The judgment clearly awards only visitation to Erica. Moreover, the record fails to support a grant of legal custody to Erica. For direction, we turn to the recent Mississippi Supreme Court case of
 
 Lowrey v. Lowrey,
 
 25 So.3d 274 (Miss.2009) (reh’g denied Jan. 28, 2010). In
 
 Lowrey,
 
 the court noted that the Mississippi custody statute created a presumption for joint custody only where the parties agreed to such.
 
 Id.
 
 at (¶ 54);
 
 see
 
 Miss.Code Ann. § 93-5-24(4) (Rev.2004) (listing the types of custody awarded by courts). In the instant case, like
 
 Lowrey,
 
 the parties failed to agree to joint custody. The testimony reflects that Thanasis testified that Erica should not currently be a part of major decisions regarding Thomas due to her poor judgment and unhealthy habits. The record supports his position on this matter with evidence of Erica’s illegal drug use, sexual relationship fed by drugs, and her lack of regard to maintain healthcare coverage for her three-year-old son, who has a breathing condition.
 

 ¶ 20. In
 
 Lowrey,
 
 the mother, Cynthia Lowrey, also failed to show evidence to support a grant of legal custody due to her lack of care for the children, her gambling addiction, and her lack of relationship with the children.
 
 Lowrey,
 
 25 So.3d at 295-96 (¶¶ 53-54). Similarly, in the case at hand,
 
 *613
 
 Erica failed to show substantial evidence to support her capability and accountability to care for her child or to share in decision making, much less bear the responsibility for decisions regarding the child’s health, education, and welfare.
 
 See
 
 Miss.Code Ann. § 93-5-24(5)(e) (Rev. 2004). In support of the chancellor’s decision and Thanasis’s asserted position, Erica failed to fulfill these responsibilities during the period when she did possess temporary custody of Thomas.
 

 ¶21. “Legal custody” means more than simply having information about one’s child; such responsibility and authority means sharing of “decision-making rights, the responsibilities and the authority relating to the health, education and welfare of a child.”
 
 Lowrey,
 
 25 So.3d at 296 (¶ 54). In
 
 Lowrey,
 
 the supreme court explained that a presumption of shared legal custody does not exist where no agreement for such arrangement exists between the parties.
 
 See
 
 Miss.Code Ann. § 93-5-24(5)(e). This case lacks any agreement regarding arrangement of shared custody, and additionally, we acknowledge that the record fails to support an award of legal custody to Erica. In the two years prior to the chancellor’s opinion, Erica had been convicted of disorderly conduct as a result of an altercation in Thana-sis’s home. Then, after being awarded temporary custody of Thomas, Erica exhibited poor judgment in engaging in sexual relations with a fellow employee who supplied her with cocaine. Erica also wrote numerous bad checks. Notably, the chancellor explained that Erica claimed she had used cocaine and written bad checks as recent as three months prior to trial, at a time when Thomas would have been in her custody. The record reflects that Thomas suffers from breathing problems and also from a speech impediment. Again exhibiting poor judgment and a lack of accountability, Erica allowed his Medicaid coverage to lapse. The record fails to support a grant of legal custody to Erica, and in light of the guidance provided by
 
 Lowrey,
 
 and also for the purposes of clarity, we recognize that a plain reading of the chancellor’s judgment reflects that the chancellor granted full legal custody to Thanasis.
 

 ¶ 22. THE JUDGMENT OF THE LOWNDES COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ, IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND MAXWELL, JJ., CONCUR.
 

 [1]
 

 .
 
 Albright v. Albright,
 
 437 So.2d 1003 (Miss.1983).