# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-00525-COA

PATRICK BRADSHAW                                                    APPELLANT

v.

ERICA MOORE                                                          APPELLEE

DATE OF JUDGMENT:           03/14/2016
TRIAL JUDGE:                HON. PERCY L. LYNCHARD JR.
COURT FROM WHICH APPEALED:  DESOTO COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:     BYRON RUSSELL MOBLEY
ATTORNEYS FOR APPELLEE:     A.E. (RUSTY) HARLOW JR.
                            KATHI CRESTMAN WILSON
NATURE OF THE CASE:         CIVIL - CUSTODY
TRIAL COURT DISPOSITION:    AWARDED SOLE LEGAL AND PHYSICAL
                            CUSTODY TO THE NATURAL
                            MOTHER/APPELLEE WITH REASONABLE
                            VISITATION TO THE NATURAL
                            FATHER/APPELLANT
DISPOSITION:                AFFIRMED - 06/13/2017
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE LEE, C.J., BARNES AND WESTBROOKS, JJ.

### LEE, C.J., FOR THE COURT:

¶1.     Patrick Bradshaw appeals the chancellor's order awarding sole legal and physical

custody of L.M.,[1] a minor child, to Erica Moore.  Finding no error, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2.     Erica had a child, L.M., born in November 2009.  Although Erica knew Patrick was

L.M.'s father, Patrick was not named on L.M.'s birth certificate.  Erica and Patrick were

---

[1] To protect the minor's privacy, we have used initials in place of the minor's name.

never married or in a relationship. At all times since her birth, L.M. has lived with Erica and with her grandparents—the Santuccis—Erica's mother and stepfather.

¶3.    Patrick, who lived in Florida at the time, first learned he was L.M.'s father on April 17, 2010, after a telephone conversation with Erica. Almost a year later, in March 2011, Patrick paid for Erica, Mrs. Santucci, and L.M. to travel to Florida for Patrick to meet L.M. In July 2011, Patrick saw L.M. again at a family wedding. Prior to his petition for custody, these two occasions were the only instances of contact Patrick had with L.M. Though Patrick testified that he knew he was L.M.'s father as early as 2011, he declined all invitations to visit with L.M. at her home and never sent any financial support for L.M.

¶4.    In August 2011, Erica applied for public benefits, and as a result, the Mississippi Department of Human Services (DHS) initiated a petition to determine paternity against Patrick. Patrick consented to a DNA test, but the test was never conducted due to an administrative error at DHS. Erica attempted to reopen the petition for paternity against Patrick in 2013, but DHS could not find a valid address to contact Patrick. As such, the petition for paternity against Patrick was again halted.

¶5.    In March 2014, Erica and the Santuccis met with an attorney to transfer sole physical and legal custody of L.M. to the Santuccis for financial reasons. Both parties testified that they believed that Erica could have physical and legal custody returned to her at any point and that the parties understood the arrangement to be temporary. The custody petition filed by the Santuccis declared the identity of L.M.'s natural father to be unknown. The Santuccis testified they did not include Patrick because he was not on the birth certificate and was not

2

a part of L.M.'s life, and because they had difficulty locating him at the time they filed their petition for custody. Thus, Patrick never received notice of the Santuccis' petition for custody. Erica did not contest the Santuccis' petition for custody, and on April 2, 2014, the Santuccis were granted legal and physical custody of L.M. Despite the change in physical and legal custody, Erica, L.M., and the Santuccis all continued to live together, and Erica continued to provide for L.M.'s needs.

¶6. Meanwhile, the petition for paternity against Patrick was pending at DHS. In September 2014, Patrick's DNA test results confirmed that he was L.M.'s natural father, and so required him to provide child support for L.M. On October 22, 2014, Patrick brought a complaint for custody against Erica. The chancery court held a hearing on the matter and set aside the previous order, which had granted custody to the Santuccis, finding that Patrick was deprived of due process. The Santuccis and Erica jointly answered Patrick's complaint for custody, arguing that it should be denied. Patrick counterclaimed for custody against the Santuccis. In May 2015, the court issued a temporary order granting the Santuccis custody of L.M. and Patrick visitation rights until trial.

¶7. On Februrary 22, 2016, trial took place. There was extensive testimony from the Santuccis, Erica, and Patrick regarding the history among the parties. The Santuccis testified that Erica was a fit, proper, and suitable person to have custody of L.M., and so they withdrew their petition for custody at trial. The Court then dismissed the Santuccis' original petition for custody and replaced Erica as the original plaintiff against Patrick regarding custody of L.M. The chancellor conducted the initial custody determination between the two

natural parents and awarded Erica sole physical and legal custody of L.M., subject to Patrick's reasonable visitation rights. Patrick now appeals.

## STANDARD OF REVIEW

¶8. This Court "employs a limited standard of review in child-custody cases and will 'affirm findings of fact by chancellors when they are supported by substantial evidence unless the chancellor abused [his] discretion, was manifestly wrong [or] clearly erroneous[,] or [applied] an erroneous legal standard[.]'" *Carter v. Carter*, 204 So. 3d 747, 756 (¶37) (Miss. 2016) (quoting *Borden v. Borden*, 167 So. 3d 238, 241 (¶4) (Miss. 2014)). "Further, this Court . . . must defer to the chancellor's findings of the facts, so long as they are supported by substantial evidence." *Randallson v. Green*, 203 So. 3d 1190, 1198 (¶36) (Miss. Ct. App. 2016) (citation omitted). "Legal questions are reviewed de novo." *Id.* at 1195 (¶17).

## DISCUSSION

### I.     Petition for Custody

¶9. In his first issue, Patrick argues that because Erica did not petition the court for custody of L.M., the chancellor erred in awarding her custody. However, the record indicates that when the chancellor dismissed the Santuccis' custody petition, he replaced Erica as the original plaintiff against Patrick for custody of L.M. Additionally, child-custody cases are Rule 81 matters that do not require responsive pleadings. M.R.C.P. 81(d)(4). Here, the chancellor correctly noted that parties in Rule 81 matters are merely required to appear and defend. The chancellor then made an initial custody determination between the two natural

4

parents, Patrick and Erica. The chancellor did not err in awarding Erica custody simply because she did not initially petition for custody, but was later substituted as the original plaintiff against Patrick in the Santuccis' petition for custody.

¶10. Patrick also argues that the chancellor's ruling resulted in unfair surprise, claiming he believed he was litigating custody solely against the Santuccis rather than against Erica. However, the record demonstrates that Patrick knew Erica was a party to the litigation from the beginning. In fact, Patrick's original complaint for custody was filed against Erica, not the Santuccis. Additionally, Erica joined the Santuccis in their counterclaim against Patrick. Once the Santuccis withdrew their petition for custody, the chancellor named Erica as the original plaintiff, and she was the only party remaining in the litigation other than Patrick. Patrick proceeded to litigate the custody issue and did not object to the chancellor's dismissal of the Santuccis or their substitution with Erica as the petitioner. As such, the award of custody to Erica could not have constituted unfair surprise. This issue is without merit.

## II. Natural-Parent Presumption

¶11. Patrick also argues that the chancellor erred in awarding Erica sole custody of L.M. because Erica waived her natural-parent presumption when she consented to the Santuccis' petition for custody of L.M. Patrick argues that, as a result, Erica's claim for custody of L.M. was inferior to his.

¶12. For support, Patrick cites to *Grant v. Martin*, 757 So. 2d 264, 266 (¶10) (Miss. 2000), in which the Mississippi Supreme Court held that "a natural parent who voluntarily relinquishes custody of a minor child . . . has forfeited the right to rely on the existing

5

natural[-]parent presumption." However, the holding in *Grant* is not applicable to the instant case. *Grant* discusses a natural parent who relinquished custody to a third party, then later attempted to reclaim the natural-parent presumption against that third party. The natural-parent presumption is a doctrine that "precludes a court from granting custody to a 'third party' over the objection of a natural parent absent clear and convincing evidence that the natural parent has abandoned or deserted the child, has engaged in immoral conduct harmful to the child, or is an unfit parent." *Welton v. Westmoreland*, 180 So. 3d 738, 744 (¶21) (Miss. Ct. App. 2015).

¶13. Here, the issue is an initial custody determination between two natural parents—not between a natural parent and a third party. Furthermore, the order granting custody to the Santuccis, which Patrick claims constituted a voluntarily relinquishment of parental rights akin to the facts in *Grant*, was set aside for lack of notice to Patrick. Thus, the chancellor correctly found that *Grant* was not applicable, and Erica has not—as Patrick contends—forfeited any natural-parent presumption. The presumption simply does not apply in this case.

¶14. Ultimately, the foremost consideration in child-custody cases is the best interest and welfare of the child. *Lacoste v. Lacoste,* 197 So. 3d 897, 902 (¶9) (Miss. Ct. App. 2016). The chancellor determined that L.M.'s best interests would be served by awarding Erica custody. The record shows that the chancellor's findings were supported by substantial credible evidence. Accordingly, the chancellor did not err in awarding custody to Erica.

¶15. **THE JUDGMENT OF THE DESOTO COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE**

6

**APPELLANT.**

IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, FAIR, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR. CARLTON, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.