# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CA-01450-COA

ASHTON JOHNSON                                                APPELLANT

v.

THOMAS KYLE SMITH                                             APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 08/23/2019 |
| TRIAL JUDGE: | HON. J. LARRY BUFFINGTON |
| COURT FROM WHICH APPEALED: | WAYNE COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | JOHN S. GRANT III |
| | JOHN SAMUEL GRANT IV |
| ATTORNEYS FOR APPELLEE: | RISHER GRANTHAM CAVES |
| | BRAD RODRICK THOMPSON |
| | TERRY L. CAVES |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 04/13/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE CARLTON, P.J., GREENLEE AND McDONALD, JJ.

### CARLTON, P.J., FOR THE COURT:

¶1.     This appeal arises from a custody dispute between Kyle Smith and Ashton Johnson over their minor child, H.S.[1]  After a bench trial, the Wayne County Chancery Court awarded Smith sole physical custody of H.S., with Johnson to have visitation.  Johnson filed several post-trial motions, which the chancellor denied.  The chancellor later entered an amended final judgment in the matter and re-adopted his previous findings regarding the custody award.

---

[1] To protect the minor child's confidentiality, we will refer to the child throughout this opinion as "H.S."

¶2.     Johnson now appeals after the following judgments were entered: (1) the chancellor's final judgment awarding Smith sole physical custody of H.S.; (2) the chancellor's order denying Johnson's motion for relief from judgment pursuant to Mississippi Rule of Civil Procedure 60(b); and (3) the chancellor's amended final judgment, in which the chancellor denied Johnson's motion for a new trial pursuant to Mississippi Rule of Civil Procedure 59(a) and her motion to alter or amend the judgment pursuant to Mississippi Rule of Civil Procedure 59(e).

¶3.     After our review, we affirm the chancellor's ruling awarding Smith sole physical custody of H.S.

## FACTS

¶4.     Johnson and Smith have one child together, a boy named H.S., who was born in 2012. At the time of H.S.'s birth, Johnson and Smith were in an intimate relationship, but they never married. Since his birth, H.S. has resided with Johnson and Smith at their respective residences.

¶5.     On February 8, 2016, Smith filed a petition to establish custody, support, and visitation of H.S. in the Wayne County Chancery Court.[2] In the petition, Smith asserted that it would be in H.S.'s best interest for Smith and Johnson to share joint legal and physical custody, with each party receiving physical custody of H.S. on alternating weeks. Smith

_____

[2] After the assigned chancellor recused, the Mississippi Supreme Court appointed a special judge to preside over the case.

personally served Johnson with a summons pursuant to Mississippi Rule of Civil Procedure 81, as well as a summons pursuant to Mississippi Rule of Civil Procedure 4.[3] The Rule 81 summons ordered Johnson to appear before the chancellor on April 1, 2016, and defend her case.

¶6.     Johnson and Smith appeared before the chancellor on April 1, 2016. However, it is undisputed that no hearing occurred that day. Instead, the parties met with the chancellor in his chambers and attempted to enter into a settlement. The record reflects that the parties could not agree upon a written order. An agreed order reflecting the parties' legal and physical custody agreement appears in the record; however, neither the parties nor the chancellor ever signed the order.

¶7.     At some point after April 1, 2016, Johnson informed Smith that she had moved with H.S. to Lafayette, Louisiana. On July 28, 2016, Smith filed an amended petition seeking sole physical custody and joint legal custody of H.S.

¶8.     Johnson asserts that Smith never served her with the amended petition pursuant to Rule 81; rather, Smith's attorney faxed a copy of the amended petition to Johnson's attorney. Smith's attorney also faxed the notice of hearing on the amended petition to Johnson's attorney. The notice listed a hearing date of August 17, 2016.

---

[3] In her brief, Johnson acknowledges that she received the summonses, but she asserts that the returns for the proof of service simply indicate "the Summons and copy of the Complaint" were served; neither return "says anything about whether the summons served was a Rule 4 or a Rule 81 summons." Johnson therefore claims that it is unclear if she was ever personally served with a proper Rule 81 summons.

¶9.    For reasons unclear from the record, no hearing took place on August 17, 2016. Instead, the chancellor held a bench trial on September 15, 2016.[4] Despite Smith's failure to serve Johnson pursuant to Rule 81, Johnson and her attorney appeared at the chancery court on September 15, 2016.

¶10.    During Smith's case-in-chief, the chancellor heard testimony from Smith. The chancellor also heard testimony from Smith's father, mother, and stepmother, as well as Johnson's father. At the close of Smith's case-in-chief, Johnson's counsel moved to exclude Smith's amended petition from consideration. Johnson's counsel argued that the amended petition was not filed properly and that the chancellor did not give Smith leave to file an amended petition. The chancellor responded, "I think you're probably right." The chancellor then added, "Not that it matters, because I gotta do what's in the best interest of the child." Johnson's counsel requested that the chancellor only grant the relief sought under Smith's original petition filed on February 8, 2016. The chancellor ultimately granted Johnson's request and stated that "we'll just go on the original petition."

¶11.    Johnson then presented her case-in-chief. The chancellor heard testimony from Johnson, as well as from her grandmother, mother, and cousin.

---

[4] The record contains no new summons or re-notice of the hearing for an alternate date. The only documents in the record suggesting that a trial or hearing would be held on September 15, 2016, were two subpoenas duces tecum and four witness subpoenas, all caused to be issued by Smith. The subpoena duces tecum both demanded production of documents "at 9 a.m., on September 15, 2016," and the witness subpoenas demanded the witness to appear at Jones County Chancery Court "at 9:30 a.m., on September 15, 2016."

4

¶12.    At the conclusion of the trial, the chancellor conducted an *Albright*[5] analysis and made his ruling from the bench.  The chancellor awarded Johnson and Smith temporary joint physical and legal custody of H.S. for a period of eleven months, until the beginning of the 2017 school year.  At the conclusion of the eleven-month period, the chancellor awarded Smith sole physical custody, with Johnson receiving visitation.  The chancellor stated that if Johnson moved back to within forty-five miles of Jones County, then she would get additional visitation on Wednesday nights.  The chancellor also ordered Smith to pay Johnson child support during the eleven-month temporary period of joint physical and legal custody.  The chancellor stated that after the temporary period, "no party will be responsible for child support to the other."  The chancellor entered a written order memorializing the bench ruling on October 24, 2016.

¶13.    Johnson immediately retained new counsel and filed several post-trial motions:  (1) a motion for findings of fact pursuant to Mississippi Rule of Civil Procedure 52, (2) a motion for relief from judgment pursuant to Mississippi Rule of Civil Procedure 60(b)(4), and (3) a motion for new trial pursuant to Rule 59(a), together with a motion to alter or amend the judgment pursuant to Rule 59(e).  The record shows that all of Johnson's post-trial motions were filed on the same day: September 23, 2016.

¶14.    In both her Rule 59 motion and her Rule 60(b) motion, Johnson argued the issues of defective Rule 81 service and lack of notice.  Johnson asserted that the Rule 81 summons

---

[5] *Albright v. Albright*, 437 So. 2d 1003 (Miss. 1983).

Smith served upon her for the April 1, 2016 hearing had lapsed when no order was entered and signed after the hearing and no continuance was granted. Johnson maintained that pursuant to Rule 81, Smith was required to serve her with an additional Rule 81 summons for the September 15, 2016 trial. Johnson argued that because Smith failed to properly serve her pursuant to Rule 81, the chancellor's judgment awarding Smith sole physical custody of H.S. was void. Johnson also informed the chancellor that she had moved from Lafayette back to Wayne County, Mississippi, and that she intended to permanently reside in Wayne County.

¶15. On August 21, 2017, the chancellor entered an order denying Johnson's Rule 60(b) motion. In his order, the chancellor addressed Johnson's argument that because Smith failed to properly serve her pursuant to Rule 81, the chancellor's judgment was void. The chancellor found that the court had jurisdiction over the matter and jurisdiction to hear the September 15, 2016 trial. The chancellor accordingly held that "[t]he applicable [j]udgment entered subsequent to the [t]rial stands in full force and effect."

¶16. On February 9, 2018, the chancellor held a hearing on the remaining post-trial motions.[6] On August 23, 2019, the chancellor entered an amended final judgment. In this judgment, the chancellor denied the relief Johnson requested in her motion for a new trial or to alter or amend the judgment. The chancellor also addressed Johnson's motion for findings

---

[6] The record reflects that the chancellor also heard arguments on other motions not at issue in this appeal.

6

of fact and conclusions of law pursuant to Rule 52. The chancellor ultimately held that he was "re-adopting" his custody award from the August 23, 2016 judgment.

¶17. Johnson now appeals, asserting the following assignments of error: (1) the chancellor erred by holding a child-custody trial without Rule 81 process or any type of written notice or agreement; (2) the chancellor erred by either sua sponte granting sole physical custody to Smith or by contradicting his prior ruling that he would not hear Smith's request for sole physical custody; (3) the chancellor erred by entering an ambiguous order on legal custody; and (4) the chancellor erred in his *Albright* findings and conclusions.

## STANDARD OF REVIEW

¶18. "The standard of review in child custody cases is limited. Reversal occurs only if a chancellor is manifestly wrong or applied an erroneous legal standard." *Barber v. Barber*, 288 So. 3d 325, 330 (¶22) (Miss. 2020). Upon review, we will "affirm findings of fact by chancellors in child custody cases when they are supported by substantial evidence unless the chancellor abused [his] discretion, was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." *Id*.

## DISCUSSION

### I.  Rule 81

¶19. Johnson argues that the chancellor violated her due process rights by holding a child-custody trial despite Smith's failure to provide Johnson with Rule 81 process or any other written notice that Smith's request for sole physical custody would be heard that day.

Johnson claims that for much of the trial "it was unclear what exactly was being tried." Johnson asserts that because Smith failed to properly serve her with process pursuant to Rule 81, the chancellor's judgment is void and must be set aside.

¶20.    On appeal, Smith does not dispute that he failed to serve Johnson with Rule 81 process providing her written notice of the September 15, 2016 trial. However, Smith asserts that Johnson waived any claim of defective process by appearing at the trial and actively participating in the litigation.

¶21.    As stated, Johnson filed post-trial motions pursuant to Rule 60(b), Rule 59(a), and Rule 59(e) raising the issue of lack of jurisdiction due to Smith's failure to properly serve her pursuant to Rule 81. The chancellor denied her motions after finding that the court had jurisdiction over the matter and jurisdiction to hear the September 15, 2016 trial. We review a chancellor's denial of post-trial motions filed pursuant to Rule 60(b) and Rule 59 for an abuse of discretion. *McNeese v. McNeese*, 119 So. 3d 264, 272 (¶20) (Miss. 2013); *Garrison v. Courtney*, 304 So. 3d 1129, 1157 (¶106) (Miss. Ct. App. 2020).

¶22.    Rule 81 "governs procedure in . . . child custody actions." *Powell v. Powell*, 644 So. 2d 269, 273 (Miss. 1994); M.R.C.P. 81(d)(1). Rule 81 matters require a special summons that "gives notice to the defendant of the date, time, and place to appear. It does not require a response." *Pearson v. Browning*, 106 So. 3d 845, 848 (¶8) (Miss. Ct. App. 2012). As stated, the record reflects that upon filing his petition for custody, Smith personally served Johnson with a Rule 81 summons to appear at the April 1, 2016 hearing. Both Johnson and

8

Smith appeared before the chancellor on April 1, 2016; however, it is undisputed that no hearing occurred that day. Instead, the parties met with the chancellor in his chambers and attempted to enter into a settlement. The record reflects that the parties could not agree upon a written order.

¶23. If a child custody action "is not heard on the day set for hearing, it may by order signed on that day be continued to a later day for hearing without additional summons on the defendant or respondent." M.R.C.P. 81(d)(5). This Court has clarified that "[f]or no additional Rule 81 summons to be required, the order that continues the trial date must be signed on or before the original trial date." *Pearson*, 106 So. 3d at 848 (¶9). The record reflects that in the present case, the chancellor did not sign or enter an order of continuance on April 1, 2016.

¶24. Smith filed an amended petition for child custody, support, and visitation on July 28, 2016, and he noticed the petition for a hearing. Because no order of continuance was entered on April 1, 2016, Smith was required to serve Johnson with an additional Rule 81 summons. M.R.C.P. 81(d)(5); *Pearson*, 106 So. 3d at 848 (¶8) ("A Rule 81 summons is necessary to begin dormant domestic actions listed in Rule 81(d)."). However, as stated, Smith failed to serve Johnson with an additional Rule 81 summons notifying her of the September 15, 2016 trial date.

¶25. "In a matter that requires a Rule 81 summons and does not use a Rule 81 summons, the resulting judgment is void because it is made without jurisdiction over the parties."

9

*Pearson*, 106 So. 3d at 848 (¶9). Therefore, "[t]he only avenue where the chancery court still would have jurisdiction over [Johnson] on [September 15, 2016], is if [Johnson] waived the lack of a Rule 81 summons by appearing." *Id*. at 851 (¶28). A defendant "may waive the requirements of Rule 81 by appearing at a hearing . . . and defending the charge on its merits without raising any objection related to service of process." *Wallace v. Wallace*, 309 So. 3d 104, 113 (¶40) (Miss. Ct. App. 2020) (citing *Isom v. Jernigan*, 840 So. 2d 104, 107 (¶¶9-11) (Miss. 2003); *Dennis v. Dennis*, 824 So. 2d 604, 610-11 (¶¶16-18) (Miss. 2002)). Stated differently, a defendant waives the requirements of Rule 81 when they appear and "manifest[] to the movant a clear intent to defend the suit. The defendant has to have done something to waive his right to insist upon proper service." *Pearson*, 106 So. 3d at 851 (¶29) (internal quotation mark omitted).

¶26. In *Dennis*, 824 So. 2d at 610 (¶16), the supreme court held that although the plaintiff failed to properly serve the defendant pursuant to Rule 81, the defendant "waived his claims of defective service and violation of due process." The supreme court explained that despite the plaintiff's failure to comply with Rule 81, the defendant appeared at the hearing, "announced ready at the beginning of the hearing, defended the allegations against him and even subpoenaed witnesses to rebut the allegations." *Id*. at 611 (¶18). The defendant also "never made an objection pertaining to defective service from the beginning to the end of the hearing." *Id*.

¶27. In *Isom*, 840 So. 2d at 106 (¶7), the plaintiff failed to properly serve the defendant

10

with process pursuant to Rule 81. However, the supreme court held that the defendant waived service "by [her] attorney making an appearance, failing to challenge jurisdiction or the sufficiency of the service of process[,] and offering evidence on her behalf." *Id*. at 107 (¶11).

¶28. Additionally, in the recent case of *Wallace*, 309 So. 3d at 114 (¶43), this Court held that a defendant waived her objection to the lack of a Rule 81 summons where the defendant "appeared at the hearing, defended . . . [the action] on the merits, and 'never made an objection pertaining to defective service from the beginning to the end of the hearing.'" *Id*. (quoting *Dennis*, 824 So. 2d at 611 (¶18)).

¶29. In the present case, the record shows that prior to the commencement of the trial on September 15, 2016, both Johnson and Smith and their respective counsel signed an "Agreed Order Adjudicating Paternity" establishing Smith as the natural father of H.S. The Agreed Order stated that "[t]his [c]ourt has jurisdiction of the parties and subject matter of this cause of action." The chancellor entered the order that same day.

¶30. During the September 15, 2016 trial, Johnson called three witnesses on her behalf and introduced documentary evidence. The trial transcript does not reflect any discussion by the parties or the chancellor regarding jurisdiction or service of process. After the chancellor issued his ruling from the bench, the chancellor asked Johnson's trial counsel if he could "think of [anything] that I have not dealt with in the petition." Johnson's trial counsel responded, "[I] [c]an't think of anything, Your Honor."

11

¶31. Furthermore, the transcript reflects that Johnson testified that in the two weeks leading up to the trial, she met with her attorney approximately five times. At a hearing on Johnson's post-trial motions, Johnson's trial counsel testified that prior to trial, he discussed the *Albright* factors with Johnson and advised her as to which *Albright* factors he felt weighed more strongly in her favor. Johnson's trial counsel also testified that he knew that "the center purpose" of the September 15, 2016 trial "was so the [chancellor] could look at the evidence, weigh it as to each *Albright* [f]actor and make a custody decision."

¶32. Upon review, we find that Johnson waived her claim to defective Rule 81 service and violation of her due process right. The record shows that Johnson appeared at the trial, signed an order acknowledging the chancellor's jurisdiction over the matter, presented witnesses and defended the action on the merits, and failed to object to the lack of a Rule 81 summons at any point during the trial. We therefore find that the chancellor did not abuse his discretion in denying Johnson's post-trial motions with respect to her claim of defective service of process.

**II. Custody Award**

¶33. Johnson next argues that because the chancellor ruled that he would not consider Smith's amended petition seeking sole physical custody of H.S., the chancellor erred by ultimately awarding Smith sole physical custody. Johnson claims that a chancellor cannot award child custody sua sponte.

¶34. In examining this issue, we must first stress that "[i]n child custody cases, the polestar

consideration is the best interest of the child, and this must always be kept paramount." *Lee v. Lee*, 798 So. 2d 1284, 1288 (¶15) (Miss. 2001) (citing *Sellers v. Sellers*, 638 So. 2d 481, 485 (Miss.1994)). "To determine the best interest of the child, Mississippi courts are guided by the factors set forth in *Albright*." *Martin v. Martin*, 282 So. 3d 703, 708 (¶16) (Miss. Ct. App. 2019).

¶35.    As to whether a chancellor can grant relief not specifically requested by a party, Mississippi Rule of Civil Procedure 54(d)[7] states, in pertinent part, that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled by the proof and which is within the jurisdiction of the court to grant, even if the party has not demanded such relief in his pleadings . . . ." In the case before us, Smith's petitions for custody (his original petition and his amended petition) contained a prayer for general relief: "And, if your plaintiff has prayed for wrong, improper, or insufficient relief, then he prays for all other relief, either general or specific, as he may be entitled in a [c]ourt of equity." The supreme court has held that a party's prayer for general relief is sufficient to allow a chancellor to "impose any relief to which [the party] was 'entitled by the proof' and which was 'within the jurisdiction of the court to grant.'" *Shumake v. Shumake*, 233 So. 3d 234, 238 (¶11) (Miss. 2017).[8]

---

[7] At the time of the chancellor's judgment in this matter, Mississippi Rule of Civil Procedure 54(c) contained this language.

[8] The supreme court has clarified:

A prayer for general relief is as broad as the equitable powers of the court.

13

¶36. Regarding the chancellor's jurisdiction to grant relief "to which [the party] was 'entitled by the proof'" in this case, Mississippi Code Annotated section 93-5-24(1)(c) (Rev. 2018) provides that "[c]ustody shall be awarded as follows according to the best interests of the child," and allows the chancellor to award joint legal custody to both parents and physical custody "to either parent." Section 93-5-24(3) also provides the chancellor with the discretion to award joint custody "upon application of one or both parents." However, the statute contains no such requirement of an "application of one or both parents" for a chancellor to award sole physical custody to a party.

¶37. In this case, we find that the chancellor possessed the discretion pursuant to section 93-5-24 to award joint legal custody to Johnson and Smith and sole physical custody to Smith. As stated, "the best interest of the child must control in all custody decisions." *Edwards v. Edwards*, 189 So. 3d 1284, 1286 (¶6) (Miss. Ct. App. 2016). We therefore find

---

Under it, the court will shape its decree according to the equities of the case, and, broadly speaking, will grant any relief warranted by the allegations of the bill, whether it is the only prayer in the bill, or whether there is a special prayer for particular and different relief; and defects in the special prayer are usually cured by a general prayer. If the facts alleged are broad enough to warrant relief, it matters not how narrow the specific prayer may be, if the bill contains a prayer for general relief. The prayer for general relief serves to aid and supplement the special prayer by expanding the special relief sought, so as to authorize further relief of the same nature. It may also serve as a substitute for the prayer for special relief, and authorize relief of a different nature when that specially prayed is denied.

*Copeland v. Copeland*, 235 So. 3d 91, 95 (¶7) (Miss. 2017) (quoting *Redmond v. Cooper*, 151 Miss. 771, 119 So. 592, 593 (1928)).

that in awarding custody according to the best interests of the child, a chancellor can grant relief that was not specifically requested, including an award of physical custody to one parent.[9] *See also Stewart v. Stewart*, 309 So. 3d 44, 70 (¶72) (Miss. Ct. App. 2020). In *Stewart*, the appellant asserted that the chancery court lacked jurisdiction over the appellee's complaint for modification of child custody because the appellee requested "permanent primary" custody instead of "physical" custody. *Id*. This Court found the appellant's argument "directly contrary to a plain reading of Mississippi Rule of Civil Procedure 8[,]" explaining that Rule 8 "delineates the general rules of pleadings," which include "'a short and plain statement of the claim showing that the pleader is entitled to relief'; . . . 'no technical forms of pleading . . . '; and . . . all pleadings are to be 'construed so as to do substantial justice.'" *Id*.

¶38. Johnson also claims that the chancellor's award of sole physical custody to Smith "without [his] requesting it by a pleading is an arbitrary deprivation of due process." (Citing *Massey v. Huggins*, 799 So. 2d 902, 909 (¶26) (Miss. Ct. App. 2001)). In *Massey*, this Court reversed a chancellor's award of child support after finding that the appellant "was not provided notice that she 'might be required to defend a claim of child support.'" *Massey*,

---

[9] *See generally Bradshaw v. Moore*, 228 So. 3d 319, 322 (¶9) (Miss. Ct. App. 2017) In *Bradshaw*, the natural father argued on appeal that the because the natural mother did not petition the chancery court for custody of the child, the chancellor erred in awarding custody to the mother. *Id*. On appeal, this Court recognized that the mother was later substituted as a plaintiff in the custody petition and held that "[t]he chancellor did not err in awarding [the mother] custody simply because she did not initially petition for custody[.]" *Id*.

799 So. 2d at 910 (¶33). This Court also found nothing in the record to suggest "that support payments from [the appellant] were even being contemplated by the court on its own or asked for by" the appellee. *Id*. (quoting *Morris v. Morris*, 359 So. 2d 1138, 1139 (Miss. 1978)). This Court acknowledged that Mississippi Rule of Civil Procedure 15(b) "permit[s] trial by consent of matters that had not been pled." *Id*. at 910 (¶29). However, this Court found that in *Massey*, the issue of the appellant paying child support was not tried by consent. *Id*. at (¶32). This Court explained that "the parties never injected the issue of [the appellant's] paying child support" at trial, and the chancellor admitted that "he 'did not hear a lot of testimony about the issue of child support.'" *Id*.

¶39. Unlike *Massey*, we find that the record before us in the present case supports Smith's contention on appeal that the issue of sole physical custody was tried by consent. Rule 15(b) states that "[w]hen issues not raised by the pleadings are tried by expressed or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Rule 15(b) further states that the failure to amend the pleadings to conform to the evidence and raise the issues "does not affect the result of the trial of these issues." *Id*. Although the chancellor in this case ruled that he would not consider Smith's amended petition, the trial transcript still contains numerous references to Smith's request for sole physical custody of H.S. The record also reflects that Johnson failed to object to any of the testimonial evidence regarding Smith's seeking sole physical custody of H.S. "The Mississippi Supreme Court has held quite clearly that if no objection is raised to the

16

introduction of issues not embraced within the original pleadings, such issues will be deemed to be tried by implied consent." *Renfroe v. Berryhill*, 910 So. 2d 624, 628 (¶17) (Miss. Ct. App. 2005); *see also InTown Lessee Assocs. LLC v. Howard*, 67 So. 3d 711, 719 (¶28) (Miss. 2011) ("[T]he failure to make a contemporaneous objection to the evidence waives the issue on appeal."). We further recognize that "[a]n issue may be 'tried by implied consent' if during trial, 'both parties were able to detect that a new issue was being litigated.'" *Ward v. Estate of Cook ex rel. Cook*, 294 So. 3d 1252, 1258 (¶15) (Miss. Ct. App. 2020) (quoting *Par Indus. Inc. v. Target Container Co.*, 708 So. 2d 44, 52 (¶20) (Miss. 1998)). Accordingly, "[i]f a party has fair notice that a new issue is being litigated and yet fails to object, then the trial court does not abuse its discretion by addressing the issue." *Id*. (citing *Shipley v. Ferguson*, 638 So. 2d 1295, 1300 (Miss. 1994)).

¶40. After reviewing the trial transcript in the case before us, we find that Johnson "ha[d] fair notice" that the issue of Smith's request for sole physical custody "[was] being litigated" and that she "fail[ed] to object." *Id*. We therefore find that the chancellor did not abuse his discretion in addressing the issue of Smith's request for sole physical custody of H.S.

### III. Legal Custody

¶41. In her appellate brief, Johnson asserts that the chancellor's award of legal custody is vague, ambiguous, and arbitrary and therefore must be reversed. Johnson states that after the expiration of parties' temporary eleven-month period of "joint legal and physical custody," the chancellor simply awarded "custody" or "physical custody" to Smith, with no

17

clear ruling on whether the temporary joint legal custody would continue to remain in effect on a permanent basis.

¶42.     At oral argument, both parties stipulated that after the expiration of the parties' temporary period of joint legal and physical custody, the chancellor awarded Johnson and Smith joint legal custody of H.S. Our review of the record and relevant caselaw confirms that after the expiration of the temporary period of joint legal and physical custody, the chancellor indeed awarded the parties joint legal custody of H.S.

¶43.     The record reflects that in ruling from the bench, the chancellor awarded the parties temporary joint legal and physical custody of H.S. for a period of eleven months. The chancellor then stated that at the conclusion of the temporary eleven-month period, Smith "shall have custody of the minor child with the mother having every other weekend" during the school year. However, the chancellor's September 15, 2016 final judgment incorporating his bench ruling states that "the parties will share physical and legal custody of the minor child for the next eleven months," but then the judgment clarifies that Smith will then "have primary *physical* custody of the minor child with the mother having visitation with the minor child every other weekend and expanded as stated above." We recognize that "a chancellor's bench ruling is not final, but is subject to modification by that same chancellor. The chancellor's decision is not the same thing as the court's final judgment." *Cook v. Whiddon*, 866 So. 2d 494, 502-03 (¶36) (Miss. Ct. App. 2004) (citing *Grey v. Grey*, 638 So. 2d 488, 492 (Miss. 1994)).

¶44. In *Wheat v. Koustovalas*, 42 So. 3d 606, 612 (¶19) (Miss. Ct. App. 2010), this Court examined whether a chancellor's custody order was ambiguous as to the award of legal custody. In that case, the chancellor's final order awarded "custody" of the minor child to the father with no articulation as to legal or physical custody. *Id*. On appeal, this Court held that "[w]hile the chancellor could have more specifically articulated that he granted both legal and physical custody to the father, we find that a plain reading of the judgment clearly awards all custody rights of [the minor child] to [the father]. The judgment clearly awards only visitation to [the mother]." *Id*.

¶45. In the present case, the chancellor's final judgment awarded Smith and Johnson joint legal and physical custody of H.S. for a temporary period of eleven months. The chancellor then articulated that at the conclusion of that temporary period, Smith will have sole physical custody of H.S. "[A] plain reading of the judgment" reflects that while the chancellor's award of sole physical custody would change at the conclusion of the eleven-month period, the award of joint legal custody would remain the same. *See id.* In the August 23, 2019 amended final judgment, the chancellor "re-adopted" the child custody award and made it a part of the amended final judgment. After reviewing the custody award set forth in the chancellor's final judgment, we find that Johnson and Smith are to share joint legal custody of H.S.

## IV. *Albright* Factors

¶46. Finally, Johnson argues that the chancellor erred in his *Albright* findings and

conclusions. Specifically, Johnson asserts that the chancellor erred in his findings on the following factors: willingness and capacity, employment responsibility, home, school, and community record of child, and other relevant factors, including the child's best interests. Johnson claims that in making his findings, the chancellor placed too much weight on Johnson's move to Lafayette and on the presence of extended family in the Wayne County area. Johnson also asserts that "the chancellor should have at least factored in that [Johnson] asked her attorney about moving, and her attorney failed to explain that doing so would hurt her case."

¶47.  "In any child custody case, the 'polestar consideration is the best interest and welfare of the child.'" *Smith v. Bellville*, 301 So. 3d 678, 684 (¶20) (Miss. Ct. App. 2020) (quoting *Albright*, 437 So. 2d at 1005). In determining the best interest and welfare of the child, the chancellor must consider the factors set forth by the supreme court:

> (1) age, health, and sex of the child; (2) which parent had "continuity of care prior to the separation"; (3) parenting skills; (4) "willingness and capacity to provide primary child care"; (5) both parents' employment responsibilities; (6) "physical and mental health and age of the parents"; (7) emotional ties between parent and child; (8) moral fitness; (9) "the home, school and community record of the child"; (10) the child's preference, if the child is at least twelve years old;[5] (11) the "stability of [the] home environment and employment of each parent"; and (12) any "other factors relevant to the parent-child relationship" or the child's best interest.

*Id*. (footnote omitted).

¶48.  We recognize that "[t]he chancellor must address each *Albright* factor that is applicable to the case, . . . but the chancellor need not decide that each factor favors one

20

parent or the other." *Riley v. Heisinger*, 302 So. 3d 1243, 1255 (¶46) (Miss. Ct. App. 2020) (citation omitted). "The chancellor has the ultimate discretion to weigh the evidence the way he sees fit." *Id*. (quoting *Johnson v. Gray*, 859 So. 2d 1006, 1013-14 (¶36) (Miss. 2003)).

¶49.   On appeal, we will reverse a chancellor's custody decision "only if it was manifestly wrong or clearly erroneous, or if the chancellor applied an erroneous legal standard." *Id*. at (¶44) (citing *Smith v. Smith*, 97 So. 3d 43, 46 (¶7) (Miss. 2012)).   Upon review of the chancellor's decision, we "cannot reweigh the evidence and must defer to the chancellor's findings of the facts, so long as they are supported by substantial evidence." *Id*.   "Thus, the issue on appeal is not whether this Court 'agrees with the chancellor's ruling,' but only whether 'the chancellor's ruling is supported by credible evidence.'" *Id*. (quoting *Hammers v. Hammers*, 890 So. 2d 944, 950 (¶14) (Miss. Ct. App. 2004)).

¶50.   The record reflects that in his bench ruling, the chancellor found the following *Albright* factors neutral between the parties:  (1) parenting skills, (2) emotional ties between parent and child, (3) willingness and capacity to provide primary child care, (4) health of the parents, (5) the child's age and health, (6) the parents' moral fitness, and (7) "stability of the employment."   As far as the factor of the child's preference, the chancellor found that this factor did not apply due to H.S.'s age.   The chancellor found that the following factors favored Smith:  (1) the child's sex, (2) the parents' employment and employment responsibilities, (3) stability of the home, and (4) the child's home, school, and community record.  The chancellor then found that Johnson prevailed on the factor of continuity of care.

21

¶51.   As stated, Johnson takes issue with the chancellor's finding that the factor of willingness and capacity to provide child care favored both parties equally. Johnson argues that she primarily cared for H.S. his whole life and has a more flexible work schedule; therefore, the chancellor should have found that this factor favored Johnson.

¶52.   Johnson also asserts that her testimony that she had primarily cared for H.S. his entire life should have carried more weight than the presence of extended family in Wayne County. Johnson claims that when considering the factors of the home, school, and community record of the child, stability of the home, and the best interest of the child, the chancellor placed too much weight on Johnson's move to Lafayette. Johnson states that the chancellor failed to consider her testimony that she was willing and able to bring H.S. back to Waynesboro for visitation with Smith. Johnson also states that the chancellor failed to consider the fact that in Lafayette, Johnson lived near her stepfather and mother, who did not work and was available to help care for H.S. Johnson asserts that at all times, she maintained a residence in Waynesboro, and she moved back to Wayne County shortly after she lost custody at the trial.

¶53.   Johnson further argues that the chancellor erred in finding that the factor of employment and employment responsibilities favored Smith. Johnson acknowledges that Smith makes more money than she does, but she claims that the chancellor should have considered her flexible work schedule. Johnson asserts that her employment flexibility makes her much more equipped to provide primary child care. Johnson argues that this

22

factor should have been at least equal, if not in her favor.

¶54.  The transcript from the chancellor's bench ruling reflects that as to the factor of parenting skills and the willingness and capacity of the parties to provide the primary care of H.S., the chancellor stated that he was "quite satisfied . . . that the parties are equal in these factors."  The testimony from the parties and the witnesses reflects that Johnson and Smith were both loving, capable parents to H.S.  Johnson and Smith both testified that Johnson was H.S.'s primary caregiver because based upon their prior, unofficial custody schedule, Johnson generally had custody of H.S. during the week, with Smith receiving visitation every other weekend (Thursday through Monday), during the summers, and around the holidays. Smith also testified that he and his family took H.S. on vacations.

¶55.  The transcript reflects that H.S. had a close relationship with members of his extended family, including Smith's mother and stepfather, Smith's father and stepmother, Johnson's father, Johnson's grandmother, and Johnson's brother, and that H.S. regularly spent time with them.  The record reflects that these family members live in and around Wayne County. Johnson testified that her mother and stepfather were the only family members located in Lafayette, which is approximately four or five hours from Waynesboro.

¶56.  As to the factor of the employment responsibilities of the parents, the chancellor determined as follows:

> [Johnson] has sold her business and is presently unemployed.  I understand she's got money to operate on from the sale of the business as well as working for her father.  And—so the responsibilities are equal.  However, the mother's employment is in Waynesboro, Mississippi, and I understand she comes up and

23

she can work when she wants to work. The Court finds however that the father's employment is steadier and in the place that he lives. And therefore, this factor favors the father.

Johnson testified that she was taking online courses in Lafayette to obtain her real estate license. Johnson explained that she hoped get a job in property management, which she described as a "9-to-5 job." Johnson also testified that if she eventually decided to sell real estate instead, she could then make her own schedule. Johnson also testified that every other weekend, she performed bookkeeping duties and ran errands for her father's business in Waynesboro. Johnson explained that she would work for her father on weekends when Smith had visitation with H.S. in Waynesboro. Our review of the transcript reflects no testimony by Johnson expressly stating that her employment flexibility made her much more equipped to provide primary child care.

¶57. Smith testified that for approximately a year, he has been employed as a court security deputy at the Jones County Chancery Court. Smith stated that he usually arrived at work "about 8:30 to 8:45" because court commences at 9:00 a.m., and he usually finishes work before lunch. Smith testified that he has Fridays off. Smith also testified that his work schedule would allow him to drop off H.S. at school or daycare before work and then pick up H.S. after school.

¶58. As to the factor of the stability of the home, the chancellor stated that from the evidence presented at trial, it appeared that Johnson's home in Lafayette was located in "nice surroundings that would be good for the child." The chancellor then stated, "However, the

father has lived in this same area." The chancellor acknowledged Johnson's testimony that she will be able to get a job when she completes her real estate course. However, the chancellor expressed concern that "if she's not able to [get a job], then that is going to require her to make other arrangements to either move or be dependent on someone else to help her" pay her bills.

¶59. Regarding the factor of the home, school, and community record of H.S., the chancellor acknowledged that because H.S. was only four years old and not in school, "ordinarily, this factor would not weigh either way." The chancellor then found that other than Johnson's mother and stepfather, "her remaining relatives are in the Waynesboro area. Her grandmother, of course testified as to the brother being an important part of Ms. Johnson's life as well as the minor child." The chancellor stated, "I have [also] heard of the ties to the father's family." The chancellor ultimately determined that because of H.S.'s close relationship with his extended family members located in the Waynesboro area, this factor favored Smith.

¶60. In *S.B. v. L.W.*, 793 So. 2d 656, 659 (¶16) (Miss. Ct. App. 2001), this Court rejected the mother's argument that "the chancellor placed undue emphasis on her impending move . . . in awarding primary custody to the father." This Court explained that "the supreme court has considered it a valid exercise of a chancellor's discretion to consider that a child has more friends and relatives in a particular location when determining the custody of a child." *Id*. at 659-60 (¶17) (citing *Sobieske v. Preslar*, 755 So. 2d 410, 413 (¶12) (Miss. 2000)).

¶61. Finally, the chancellor explained that "even though there are substantially more factors that favor the father, the final factor to look at for the Court is what is in the best interest of the minor child." The chancellor opined that "[t]he best interest of the minor child would be to have both parents within 30 miles of each other and be able to continue what they have evidentially [sic] been doing, at least for the last year." However, the chancellor ultimately awarded the parties joint legal and physical custody of H.S. "for the year prior to school starting next August," a period of eleven months. At the conclusion of the temporary eleven-month period, the chancellor awarded Smith sole physical custody of H.S. and visitation to Johnson. As we explained above, the chancellor awarded the parties joint legal custody.

¶62. In his amended judgment, the chancellor further found as follows:

> The [c]ourt further finds that the stability of home factor should not be changed to neutral. Even though after the hearing the mother did return to live full time in her previous home. At the trial of this matter mother had moved to Louisiana to be around her mother. All other relatives of both parties resided in and around the Wayne/Jones County area. Because the [c]ourt found this factor to favor the father, mother requests a change and feels the [c]ourt should alter. The [c]ourt is required to consider the "now" and not the future.

As to Johnson's argument that the chancellor failed to consider the fact that she moved back to Waynesboro after losing custody of H.S., the chancellor's amended judgment shows that "the chancellor was aware of [this fact] and gave [it] the weight . . . [he] saw fit." *Smith*, 301 So. 3d at 685 (¶27).

¶63. After our review, we find that the chancellor's findings of fact in his custody decision were supported by substantial evidence in the record. As stated, "the chancellor has the

26

ultimate discretion to weigh the evidence the way he sees fit." *Riley*, 302 So. 3d at 1255 (¶44). We "cannot reweigh the evidence and must defer to the chancellor's findings of the facts, so long as they are supported by substantial evidence." *Id*. Accordingly, we affirm the chancellor's judgment.

¶64. **AFFIRMED.**

**BARNES, C.J., WILSON, P.J., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, SMITH AND EMFINGER, JJ., CONCUR. McCARTY, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**